IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARIE S. FRIEDMAN, M.D. and The Illinois State Rifle Association, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 13-cv-09073 ) |
| THE CITY OF HIGHLAND PARK, | ) Hon. John W. Darrah ) |
| DEFENDANT. | ) |

**THE CITY OF HIGHLAND PARK'S RESPONSE TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Seven months ago, the City of Highland Park ("Highland Park") joined the growing number of state and local governments that have banned the possession of rapid fire, high capacity guns commonly referred to as assault weapons. More than one-fourth of the Nation's population lives in states or municipalities that have enacted similar laws. *Heller v. District of Columbia*, 670 F.3d 1244, 1268, fn. \*\* (D.C.Cir. 2011) ("*Heller II*") (citing similar statutes in New York, Connecticut, Hawaii, Massachusetts, Maryland, and New Jersey, and ordinances in New York City, Boston, Buffalo, Denver, Cleveland, Columbus, Rochester, Aurora, Illinois, and the District of Columbia). The Highland Park Ordinance, like those in these other jurisdictions, affects only a tiny fraction of the firearms in circulation. It preserves the right to possess firearms for self defense while banning unusually dangerous offensive weapons.

Plaintiffs seek a preliminary injunction barring Highland Park from enforcing the Ordinance. The sole basis for this extraordinary remedy is Plaintiffs' broad based argument that the Ordinance violates the Second Amendment to the United States Constitution. There is

absolutely no likelihood Plaintiffs will succeed on this claim. In just the past three years, federal and state courts across the country have rejected similar constitutional challenges to assault weapon bans that are substantially the same as Highland Park's:

> *Shew v. Malloy*, -- F.Supp.2d. --, 2014 WL 346859 (D.Conn. January 30, 2014) (denying plaintiffs' motion to preliminarily enjoin assault weapon law based on Second Amendment challenge; granting defendant's motion for summary judgment)
>
> *Kampfer v. Cuomo*, No. 6:13-cv82, 2014 WL 49961 (N.D.N.Y. January 7, 2014) (granting defendant's motion to dismiss Second Amendment challenge to assault weapons statute)
>
> *NYS Rifle and Pistol Ass'n, Inc. v. Cuomo*, -- F.Supp.2d--, 13-CV-291S, 2013 WL 6909955 (W.D.N.Y. December 31, 2013) (denying plaintiff's motion for summary judgment and granting defendants' motion to dismiss Second Amendment challenge of law prohibiting assault weapons and large capacity magazines)
>
> *Tardy v. O'Malley*, No. 1:13-CV-02841 (D.Md. October 1, 2013) (motion for temporary restraining order against enforcement of assault weapon statute denied) (attached as Ex. F)
>
> *Heller v. District of Columbia*, 670 F.3d 1244 (D.C.Cir. 2011) (affirming grant of summary judgment for defendant as to Second Amendment challenge of assault weapon and large capacity magazine law)
>
> *People v. James*, 174 Cal.App.4th 662 (Cal.App.3d Dist. 2009) (affirming conviction for unlawful possession of assault weapon and holding that prohibition of assault weapons does not violate Second Amendment)
>
> *People v. Zondorak*, 220 Cal.App.4th 829 (Cal.App.4th Dist. 2013) (same)
>
> *People v. Arizmendi*, 2011 Cal.App. LEXIS 7284 (Ct.App. 2011) (same)
>
> *Wilson v. County of Cook*, 407 Ill.App.3d 759 (1st Dist. 2011) (affirming dismissal of plaintiff's Second Amendment claims), rev'd and remanded, 968 N.E.2d 641 (Ill. 2012).[1]

---

[1] In *Wilson*, the Illinois Appellate Court dismissed a constitutional challenge to an assault weapon ban. The Illinois Supreme Court reversed and remanded for further proceedings, finding that "given the procedural posture of the case...we cannot say at this point that it is clearly apparent that no set of facts can be proved" in support of plaintiffs' challenge. 968 N.E.2d at 657. The Court's remand has little persuasive authority given the leeway under section 2-615 as compared to the burden on a motion for preliminary injunction under Fed.R.Civ.P. 65(a).

Plaintiffs' motion should be denied. The Second Amendment does not protect the assault weapons or large capacity magazines that are regulated by the ordinance. Even if it did, the Ordinance does not violate the Second Amendment because the Ordinance regulates a small subset of firearms and substantially advances Highland Park's important interests in public safety and protecting its citizens and police force.

## FACTUAL SUMMARY

### I. The Highland Park Ordinance

On June 24, 2013, the City Council of Highland Park adopted Ordinance No. 68-13, prohibiting the manufacture, sale and possession of assault weapons and large capacity magazines within the City (the "Ordinance"). *See*, Exhibit A, Declaration of Hon. Nancy Rotering, Mayor of the City of Highland Park, ("Rotering Dec."), at ¶ 5. With minor immaterial exceptions, the Ordinance is identical to Cook County's assault weapon ordinance. *Id.* at ¶ 6. Highland Park chose Cook County's ordinance as a model because it had recently survived equal protection and vagueness challenges before the Illinois Supreme Court. *Id.* at ¶ 7; *Wilson*, 968 N.E.2d, at 649-653, 657-8.

The Ordinance defines an "Assault Weapon" as a semi-automatic rifle, pistol, or shotgun with the capacity to accept more than ten rounds of ammunition and at least one of five features: a pistol grip without a shoulder stock; a protruding grip for the non-trigger hand; a folding, telescoping or thumbhole stock; a barrel shroud; or, a muzzle brake or compensator. City Code of Highland Park, Sec. 136.001(C) (a copy of the Ordinance is attached to the Rotering Declaration as Exhibit A). A "Large Capacity Magazine" is any ammunition feeding device that can accept more than ten rounds of ammunition. *Id.*, Sec. 136.001(G). The Ordinance also

defines as "Assault Weapons" several specific models of firearms, including copies or duplicates. *Id.*, Sec. 136.001(C)(7).

### II. The Ordinance Advances Highland Park's Substantial Interest in Public Safety.

In the Ordinance, the Highland Park City Council recited its conviction that Assault Weapons pose an undue threat to public safety for the City residents, property owners and visitors. Rotering Dec. at Ex. A, p. 1. The City Council was motivated by recent, highly publicized mass shootings in Aurora, Colorado; Newtown, Connecticut; Tucson, Arizona; and Santa Monica, California. *Id.* at ¶ 9. Indeed, according to the Federal Bureau of Investigation, the frequency of these active shooter events has doubled between 2009 and 2013, as compared to the period 2000 to 2008. *See,* Exhibit C, Declaration of Mark Jones, ("Jones Dec."), ¶ 13, *citing,* Blair, Martindale & Nichols, *Active Shooter Events from 2000 to 2012,* Jan. 2014 (available at http://leb.fbi.gov/2014/january/active-shooter-events-from-2000-to-2012?utm_campaign=email-Immediate&utm_content=286210).[2]

Since 2007, there have been at least fifteen incidents in which offenders using assault-type weapons or other semiautomatics with large capacity magazines have wounded and/or killed eight or more people.[3] Some of the more notorious of these incidents include:

---

[2] The FBI defines an "active shooter event" as "an individual actively engaged in killing or attempting to kill people in a confined and populated area, typically through use of a firearm." *Id.* The events considered in the FBI's study were limited to those where the shooter attempted to kill multiple people in an area occupied by multiple unrelated individuals where at least one victim was unrelated to the shooter.

[3] *See,* Violence Policy Center, *Mass Shootings in the United States Involving High-Capacity Ammunition Magazines,* available at http://www.vpc.org/fact_sht/VPCshootinglist.pdf; Mark Follman, Gavin Aronsen & Deanna Pan, *US Mass Shootings, 1982-2012: Data from Mother Jones' Investigation* (updated Feb. 27, 2013), available at http://www.motherjones.com/politics/2012/12/mass-shootings-mother-jones-full-data; and Mark Full, Gavin Aronsen & Jaeah Lee, *More Than Half of Mass Shooters Used Assault Weapons and High-Capacity Magazines,* (Feb. 27, 2013), available at http://www.motherjones.com/politics/2013/2/assault-weapons-high-capacity-magazines-mass-shootings-feinstein.

4

#27648463_v1

- Blacksburg, Virginia, April 16, 2007: Student Seung-Hui Cho killed 33 (including himself) and wounded 17 on the campus of Virginia Tech, armed with a handgun and multiple large capacity magazines;

- Tucson, Arizona, January 8, 2011: Jared Loughner, armed with a handgun and multiple large capacity magazines, killed six and wounded 13, including Congresswoman Gabrielle Giffords;

- Aurora, Colorado, July 20, 2012: James Holmes killed 12 and wounded 58 in a movie theater, armed with a Smith & Wesson M&P15 assault rifle, 100 round large capacity magazines, and other firearms; and

- Newtown, Connecticut, December 14, 2012: Adam Lanza killed 26 (20 of whom were young children) and wounded two at Sandy Hook Elementary School, armed with a Bushmaster AR-15-style assault rifle, two handguns, and multiple large capacity magazines.

Highland Park has good reason to be concerned by such mass shooting events. One fourth of its 29,000 residents are under the age of 18; five percent are under the age of five. *See* Exhibit B, Declaration of Paul Shafer, Chief of Police for the City of Highland Park ("Shafer Dec."), ¶ 4. In addition, Highland Park contains four community centers, three nursing homes, numerous shopping centers, and Ravinia Festival, an outdoor music theater attracting thousands of visitors throughout the summer. *Id.* at ¶¶ 14, 15.

Importantly, Highland Park is host to 15 schools, including the Highland Park High School. *Id.* at ¶ 13. And, Highland Park is not a stranger to gun-related school violence. In May 1988, Laurie Dann entered the Ravinia Elementary School in Highland Park with a firearm and attempted to detonate a bomb in the school's hallway. *Id.* at ¶ 12. Later that same day, Dann shot six elementary school students, killing one, in neighboring Winnetka. *Id.* Thus, the incident at Sandy Hook Elementary School in Newtown was particularly poignant to the Highland Park City Council. Rotering Dec. ¶ 9.

In Newtown, Adam Lanza used an assault weapon legally purchased by his mother to shoot his way into a locked elementary school building. In ten minutes, he shot and killed

#27648463_v1

twenty first grade children and six adults, and wounded two others. He discharged his weapon at least 130 times in less than eight minutes. Newtown Police responding to the first 911 call were on the scene in less than four minutes. One minute later, Lanza killed himself. Jones Dec. ¶ 12, *citing* Office of the State's Attorney Judicial District of Danbury, *Report of the State's Attorney for the Judicial District of Danbury*, Nov. 25, 2013, pp. 9-22, also attached hereto as Ex. G.

## LEGAL ANALYSIS

### I. Analytical Framework

Plaintiffs seek a preliminary injunction against enforcement of the Ordinance, claiming it violates the Second Amendment to the United States Constitution. To prevail, Plaintiffs must demonstrate: (1) no adequate remedy at law exists, (2) they will suffer irreparable harm if the injunction is not granted, (3) they have a reasonable likelihood of success on the merits of the underlying claim, (4) the irreparable harm Plaintiffs will suffer without injunctive relief is greater than the harm the City will suffer if the injunction is granted, and (5) the injunction will not harm the public interest. *Rowell v. Voortman Cookies, Ltd.*, 02 C 0681, 2003 WL 22317373 (N.D. Ill. Oct. 8, 2003), *citing, Kiel v. City of Kenosha*, 236 F.3d 814, 815-16 (7th Cir.2000).

The motion should be denied because Plaintiffs do not have a reasonable likelihood of success on the merits. The Ordinance does not implicate Plaintiffs' Second Amendment rights. Even if it did, the Ordinance does not violate the Second Amendment because it substantially advances an important public interest. Finally, the balance of hardships favors Highland Park.

In *District of Columbia v. Heller*, 554 U.S. 570, 592, 128 S.Ct. 2783, 2797, 171 L.Ed.2d 637 (2008), the Supreme Court recognized limitations on the Second Amendment "individual right to possess and carry weapons in case of confrontation." There is no right "to keep and carry any weapon whatsoever in any manner whatsoever, and for whatever purpose." 554 U.S. at 626,

128 S.Ct. at 2816. Instead, the Court closely tied the scope of the Second Amendment right to self-defense, especially in the home. 554 U.S. at 628, 128 S.Ct. at 2817.[4]

In *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011), the Seventh Circuit set forth "the proper decision method for evaluating alleged infringement of Second Amendment rights." The Court generally endorsed the two-pronged inquiry followed by the Second, Third, Fourth, Tenth and D.C. Circuits. *Cf., Heller v. District of Columbia*, 670 F.3d 1244, 1152-53 (D.C. Cir. 2011) ("*Heller II*"); *U.S. v. Decastro*, 682 F.3d 160, 164-67 (2d Cir. 2012); *U.S. v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010); *U.S. v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010); *U.S. v. Reese*, 627 F.3d 792, 800-01 (10th Cir. 2010). The initial inquiry is whether the restricted activity is protected by the Second Amendment. *Ezell*, 651 F.3d at 701. If the Second Amendment does not protect the possession of Assault Weapons or large capacity magazines, "the regulated activity is categorically unprotected, and the law is not subject to further Second Amendment review." *Id*, at 703.

If the Court cannot conclude that assault weapons and large capacity magazines fall outside of the scope of the Second Amendment, "there must be a second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." 651 F.3d at 703. The Court in *Ezell* explained:

> *McDonald* emphasized that the Second Amendment "limits[,] but by no means eliminates," governmental discretion to regulate activity falling within the scope of the right. 130 S.Ct. at 3046. Deciding whether the government has transgressed the limits imposed by the Second Amendment -- that is, whether it has "infringed" the right to keep and bear arms -- requires the court to evaluate the regulatory means the government has chosen and the public-benefits ends is seeks to achieve. Borrowing from the Court's First Amendment doctrine, the rigor of this judicial review will depend on how close the law comes to the core of the

---

[4] For this reason, the *Heller* Court found the statute at issue unconstitutional because it prohibited the possession of handguns -- "the most preferred firearm in the nation to 'keep and use for protection of one's home and family'" *Id*. "Few laws in the history of our Nation have come close to the severe restriction of the District's handgun ban." 554 U.S. at 629, 128 S.Ct. at 2818.

7

#27648463_v1

Second Amendment right and the severity of the law's burden on the right. 651 F.3d at 703.

## II. The Second Amendment Does Not Protect The Possession of Assault Weapons and Large Capacity Magazines.

In *Heller*, the Supreme Court identified three primary factors to consider in judging whether a regulation implicates Second Amendment rights. First, the Second Amendment *only* applies to firearms commonly used for lawful purposes. 554 U.S. at 627. Second, "dangerous or unusual" weapons may be heavily regulated or banned. *Id.* Third, a nexus to self-defense is a "central component" of the Second Amendment right. *Id.* at 599.

Plaintiffs here wrongly suggest that whether weapons are in common use is dispositive of the first inquiry. (Plaintiffs' Mem., p. 2.) This misreads *Heller*. If weapons could acquire Second Amendment protection simply by becoming widespread, people could gain the right to possess sawed-off shotguns or M-16s if enough were disseminated. Yet these firearms were specifically identified by the Supreme Court as categorically unprotected. 554 U.S. at 624-28.

Instead, this Court should consider all three factors to determine whether individuals have a constitutional right to own Assault Weapons or large capacity magazines. These armaments fail all three factors: they are not common, they are dangerous and unusual, and they are inappropriate for self-defense.

### A. Assault Weapons Are Not Commonly Used for Lawful Purposes.

It is difficult to know exactly how many Assault Weapons there are in the United States because the firearm manufacturers do not generally release their sales data. *See* Exhibit D, Declaration of James Yurgealitis ("Yurgealitis Dec."), ¶ 35. The best estimates are that assault weapons as typically defined account for only one to two percent (1-2%) of all privately owned firearms in the United States. Yurgealitis Dec. ¶ 36; Marianne Zawitz, U.S. Dep't of Justice, Bureau of Justice Statistics, *Guns Used in Crime* 6 (1995). While Plaintiffs cite manufacturing

8

figures for AR platform semi-automatic rifles, not all of these are privately owned and many are illegally trafficked to Mexico. Yurgealitis Dec., ¶ 35. Even if Plaintiffs' figures are accurate, they do not support the conclusion that Assault Weapons are commonly used. *See* Laurence H. Tribe, *Proposals to Reduce Gun Violence: Protecting Our Communities While Respecting the Second Amendment*, Testimony before the Senate Judiciary Committee, Feb. 12, 2013, at p. 24-25 (attached as Exhibit H).

Moreover, the evidence also indicates that no matter how many Assault Weapons exist, they are not generally used for lawful purposes. *See* U.S. Dept. of Treasury, *Assault Weapons Profile* 19 (finding that assault weapons "are preferred by criminals over law abiding citizens 8 to 1"). Assault Weapons make up only one or two percent of privately-owned firearms in the United States, yet they represent up to eight percent of guns used in crimes and account for 16 percent of guns used to murder police officers. Jones Dec. ¶ 14.[5]

### B.  Assault Weapons are Dangerous and Unusual.

Assault Weapons are clearly dangerous and unusual. The AR-15 family of rifles is essentially the same as the military M-16, except for the selective fire control on the M-16. Jones Dec. ¶¶ 15, 16, 37; Shafer Dec. ¶ 18; Yurgealitis Dec. ¶ 23. Even though the AR-15 fires once with each trigger pull, the difference in the rate of fire is minimal. Jones Dec. ¶ 16. As the D.C. Circuit held in *Heller II*, "It is difficult to draw meaningful distinctions between the AR-15 and the M-16." 670 F.3d at 1263.

Moreover, the Highland Park Ordinance regulates only semi-automatic firearms that also have one of five specific features. City Code of Highland Park, Sec. 136.001(C). Each of these features has a military heritage and was originally designed for offensive or combat use, not self-

---

[5] The Plaintiffs rely on gun owner surveys indicating that sporting and self-defense are the top two reasons for owning a semi-automatic rifle. This evidence is transparently self-serving and methodologically flawed. *See generally*, Exhibit E, Declaration of Gretchen Cusick.

9

#27648463_v1

defense. Jones Dec. ¶ 44; Yurgealitis Dec. ¶ 33. When any of the five features proscribed by the Ordinance is included on a semi-automatic firearm, the weapon becomes dramatically less appropriate for self-defense and clearly more dangerous. *Heller II,* 670 F.3d at 1262 ("[These] military features ... are designed to enhance [these firearms'] capacity to shoot multiple human targets very rapidly.") (quoting Testimony of Brian J. Siebel, Brady Center to Prevent Gun Violence (Oct. 1, 2008)).

For example, a rifle that has only a pistol grip without a shoulder stock is more easily concealed, maneuvered in confined spaces, and fired from the hip or at a point directly in front of the operator. Yurgealitis Dec. ¶ 33. A protruding foregrip is not found on traditional sporting firearms because it is meant to allow the operator better control of the weapon during rapid, repeating shooting, which is not usually employed in hunting or competitive target shooting. *Id.* A folding or telescoping stock allows the operator to conceal the weapon. *Id.* A barrel shroud allows the operator to grip the barrel without getting burned during rapid fire of multiple rounds, an attribute useful for mass assaults but hardly needed to hunt or defend oneself in the home. *Id.* A muzzle brake or compensator helps the operator regain control of the weapon when they are firing too rapidly to reacquire their target between shots. *Id.*

In addition, mass shooting events are demonstrably more catastrophic when Assault Weapons or large capacity magazines are involved. A recent study by Mayors Against Illegal Guns (MAIG) shows that of the 93 mass shooting events occurring between January 2009 and September 2013, at least 14 semi-automatic or fully automatic assault weapons were recovered from the suspects. Jones Dec. ¶ 11. In those incidents, 151 percent more casualties resulted and 63 percent more deaths occurred than in incidents involving other types of guns. *Id.*; *Cf., People v. James*, 174 Cal. App. 4th 662, 676 (Cal. App. 3d Dist. 2009) (holding that assault weapons are

not protected by the Second Amendment because they are unusual and dangerous "weapons of war," not arms "typically possessed by law-abiding citizens for lawful purposes such as sport hunting or self-defense"), cert denied, *James v. California*, 559 U.S. 946 (2010); *Heller v. District of Columbia*, 698 F. Supp. 2d 179, 193-95 (D.D.C. 2010) (same), aff'd on other grounds, *Heller II*, 670 F.3d 1244 (D.C. Cir. 2011).

### C. Assault Weapons are Not Appropriate for Self-Defense.

Finally, Assault Weapons are not appropriate for the core purpose of the Second Amendment: self defense in the home. Semi-automatic rifles are designed for use in spaces much larger and more open than a typical living room, bedroom or hallway. Jones Dec. ¶¶ 46-48. Moreover, any responsible gun owner will keep the firearm under lock and key. *Id.* Properly stored, rifles are much more inaccessible than handguns, making them less useful during a burglary. *Id.* at ¶¶ 47, 50. Experts agree that a pump action shot gun or a revolver, neither of which are banned by the Ordinance, are far more effective for self defense in the home. *Id.* at ¶¶ 35, 49, 50; Yurgealitis Dec. ¶¶ 40, 41.

Furthermore, overwhelming firepower is simply unnecessary in a community like Highland Park. In the last five years, there have been only two incidents of home invasions with residents present. Shafer Dec. ¶ 9. Moreover, the police have issued nearly 3000 alarm user permits and the average response time to a 911 call is four minutes and 20 seconds. *Id.* at ¶¶ 6, 21. Finally, Highland Park has not had a homicide since June 2003 and has had only four dating back to 1996. *Id.* at ¶ 11.

In short, the Assault Weapons subject to the Ordinance fail all three of the factors identified in *Heller I* as indicative of weapons protected by the Second Amendment. They are not common; they are unusually dangerous; and, they are not appropriate for self defense. As a

11

#27648463_v1

result, this Court should find that the Ordinance does not implicate Second Amendment rights and deny Plaintiffs' motion for a preliminary injunction.

### III. The Ordinance Substantially Advances An Important Government Interest.

#### A. Intermediate Scrutiny Is the Appropriate Standard of Review

The Ordinance is also valid because it substantially advances Highland Park's important interest in public safety. If this Court does not find that Assault Weapons and large capacity magazines are categorically unprotected by the Second Amendment, it must analyze whether the Ordinance satisfies a form of heightened scrutiny that is determined by a sliding scale:

> First, a severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end. Second, laws restricting activity lying closer to the margins of the Second Amendment right, laws that merely regulate rather than restrict, and modest burdens on the right may be more easily justified. How much more easily depends on the relative severity of the burden and its proximity to the core of the right. *Ezell,* supra, 651 F.3d at 706, 708.

Highland Park's Ordinance does not strike anywhere near the core of the Second Amendment and only modestly burdens, if at all, any Second Amendment right. The Ordinance restricts a subclass of one or two percent of privately-owned firearms while leaving available ample alternative firearms for lawful purposes such as self defense and hunting. As such, it merely regulates the manner by which people may exercise their Second Amendment rights. Because the Ordinance does not impose "a severe burden on the core Second Amendment right of armed self-defense," this Court should apply a lower level of heightened scrutiny, such as intermediate scrutiny. *Ezell,* 651 F.3d at 708.

Applying intermediate scrutiny in this case is consistent with the caselaw in this Circuit. Regulations that essentially prohibited the ability to "keep and bear" a handgun, which the Supreme Court in *Heller* identified as "the most preferred firearm in the nation to 'keep' and use for protection of one's home and family," 554 U.S. at 628-9, have been struck down under near

12

strict scrutiny. *McDonald v. City of Chicago*, -- U.S. --, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) ("effectively banning handgun possession by almost all private citizens"); *Ezell,* supra (banning all target ranges but requiring range training for gun permit); *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) (prohibiting possession of ready to use gun when not on person's own property); *Illinois Association of Firearms Retailers v. City of Chicago*, --F.Supp.2d--, 2014 WL 31339 (N.D.Ill. Jan. 6, 2014) (prohibiting acquisition of firearms within city limits).

In contrast, this Circuit has rejected constitutional challenges to laws, such as the Ordinance, that merely regulate aspects of gun use and ownership using a standard of review equivalent to intermediate scrutiny. *U.S. v. Skoien*, 614 F.3d 638, 641-42 (7th Cir. 2010) (prohibition on the possession of firearms by domestic violence misdemeanants satisfied intermediate scrutiny); *U.S. v. Yancey*, 621 F.3d 681, 683-84 (7th Cir. 2010) (same holding regarding prohibition on possession of firearms by persons convicted of using illegal drugs); *U.S. v. Williams*, 616 F.3d 685, 692-93 (7th Cir. 2010) (same holding regarding prohibition on possession of firearms by convicted felons).

All Courts that have addressed assault weapon regulations after *Heller I* have applied intermediate scrutiny and upheld them. *Heller II*, 670 F.3d at 1261-2 ("the prohibition of semiautomatic rifles and large-capacity magazines does not effectively disarm individuals or substantially affect their ability to defend themselves"); *Shew v. Malloy*, 2014 WL 346859 (D.Conn. 2014) ("the legislation here does not amount to a complete prohibition on firearms for self-defense in the home"); *Kampfer v. Cuomo*, -- F.Supp.2d --, 2014 WL 49961 (W.D.N.Y. 2014) (assault weapon prohibitions "do not create a categorical ban on an entire class of weapons, and ample firearms remain available to carry out the *'central component'* of the Second Amendment right: self-defense"); *New York State Rifle and Pistol Ass'n, Inc. v. Cuomo*, --

F.Supp.2d --, 2013 WL 690995 (W.D.N.Y. 2013) ("restrictions that impose only modest burdens (because they do leave open ample alternative channels) are judged under a mild form of intermediate scrutiny"); *Tardy v. O'Malley,* No. 1:13-CV-02841 (D.Md. October 1, 2013), attached hereto as Exhibit F, at pp. 67-8 (ban on assault weapons "subclass" subject to intermediate scrutiny).

### B. The Ordinance Satisfies Intermediate Scrutiny

Intermediate scrutiny asks whether the questioned regulation is substantially related to the achievement of an important government interest. *Clark v. Jeter,* 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988). There is no doubt that Highland Park has a compelling interest in public safety and protecting its citizens and police. *Illinois Ass'n of Firearms Retailers,* supra ("That is one of the fundamental duties of government: to protect its citizens.")

Nor is there any doubt the Ordinance is substantially related to this interest. Assault Weapons and large capacity magazines result in more fatalities and wounded victims than conventional weapons when they are involved in mass shootings. Highland Park is justified in attempting to protect its schools, public spaces, residents and visitors, and its police by seeking to reduce the presence of these weapons within its city limits. *Cf., Shew,* supra, at *9 ("The assault weapon features increase a firearm's 'lethalness' and are therefore related to a compelling interest of crime control and public safety."); *Kampfer,* supra, at *6 ("the provisions at issue attempt only to decrease in number certain firearms deemed particularly dangerous by the legislature for the sake of public safety, which interests are clearly advanced"); *NYSRPA,* supra, at *17, ("to survive intermediate scrutiny, the fit between the governmental objective and the challenged regulation need only be substantial, not perfect....New York has satisfied its burden"); *Heller II,* 698 F.Supp.2d at 194-95 (it is "beyond dispute" that public safety is an important government

#27648463_v1

interest, "there is a substantial fit between that goal and the ban on assault weapons and large capacity magazines"). The Ordinance survives intermediate scrutiny and should be upheld.

### IV. The Balance of Harms Favors Denial of the Motion.

Finally, the risk of harm to Highland Park if an injunction is wrongfully entered greatly outweighs the risk of harm to Plaintiffs if the injunction is wrongfully denied. If the injunction is wrongfully entered and a tragedy similar to Newtown occurs in Highland Park, the harm would be catastrophic. On the other hand, if the injunction is denied, Plaintiffs will be required to store their Assault Weapons outside of Highland Park and use another firearm for self-defense in the home. In *Tardy*, supra, the Court weighed these risks when it denied the plaintiffs' motion for a temporary restraining order:

> I don't find the plaintiffs' need to be able to fire more bullets, again, in the absence of some kind of evidence that this is necessary for self-defense, the need to fire more bullets in defense of the home, which appears to be based on the lack of accuracy that they propose the citizens would have in firing these weapons, I can't see that as tipping the balance in favor of the plaintiffs, or arguing against the strong public interest here. Ex. F, p. 74.

### CONCLUSION

For all of the foregoing reasons, Plaintiffs' Motion for a Preliminary Injunction should be denied.

Respectfully submitted,
CITY OF HIGHLAND PARK

By: ___/s Christopher J. Murdoch___
One of Its Attorneys

Christopher J. Murdoch
Steven M. Elrod
Hart M. Passman
Holland & Knight LLP
131 South Dearborn Street, 30th Floor
Chicago, Illinois 60603
Phone: (312) 263-3600

15

#27648463_v1

## CERTIFICATE OF SERVICE

The undersigned certifies that on **February 7, 2014**, the foregoing **Memorandum in Response to Plaintiffs' Motion for a Preliminary Injunction** was electronically filed with the Clerk of the United States District for the Northern District of Illinois by filing through the CM/ECF system, which served a copy of the foregoing upon counsel of record.

s/ Christopher J. Murdoch