IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Arie S. Friedman, M.D. and the Illinois State
Rifle Association,

                        Plaintiffs,

          v.

City Of Highland Park,

                        Defendant.

Case No. 13-cv-9073

Hon. John W. Darrah

### DEFENDANT CITY OF HIGHLAND PARK'S
### MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
### FOR SUMMARY JUDGMENT

In the wake of a series of horrific mass shootings and its own close proximity to tragic

school violence, the City of Highland Park recently took steps to prohibit the possession of a

narrow subclass of extremely dangerous firearms: semi-automatic assault weapons and large

capacity magazines. These weapons are closely-related to weapons used only by the military

and share a single purpose. They were designed to kill human beings as quickly and efficiently

as possible.

In passing its Ordinance prohibiting assault weapons and large capacity magazines,

Highland Park joined the states of Connecticut, Hawaii, Maryland, Massachusetts, New Jersey,

and New York -- all of whom have passed similar legislation. Highland Park also joined

municipalities including Boston, Buffalo, Cleveland, Columbus, Denver, New York City, and

the District of Columbia in banning assault weapons within their borders. Highland Park's

Ordinance is also nearly identical to the ban on assault weapons and large capacity magazines

enacted by Cook County. In all, more than one-fourth of the United States population lives in

jurisdictions which have chosen to eliminate this narrow range of dangerous firearms.

Since the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), every court that has been asked to consider the constitutionality of a ban on assault weapons or large capacity magazines -- federal and state courts alike -- has determined that these prohibitions do not violate the Second Amendment right to self-defense. Instead, ordinances like the one adopted by Highland Park address the government's important interest in public safety while affecting only a tiny fraction of the firearms available for purchase and use in the United States.

Under Highland Park's Ordinance, Plaintiffs will continue to exercise their constitutional right of self-defense. There is no impediment to Plaintiffs' possession of hundreds if not thousands of other firearms. Highland Park has simply eliminated that narrow sliver of weapons which have led to such tragedy and devastation in incident and incident. Plaintiffs' objections to these common sense regulations, however, cannot meet the requirements for a constitutional violation. Accordingly, Plaintiff claims should be dismissed as a matter of law and summary judgment should be entered in favor of the City of Highland Park.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

### The City of Highland Park Adopts its Assault Weapon Ordinance

On June 24, 2013, the City Council of Highland Park adopted Ordinance No. 68-13 prohibiting the manufacture, sale and possession of assault weapons and large capacity magazines within the City.[1] In adopting the Ordinance, the City Council stated that it had "determined that assault weapons are not traditionally used for self-defense in the City of Highland Park."[2] The City Council further stated that these weapons "pose an undue threat to public safety to residents, property owners, and visitors within the City of Highland Park." Id.

---

[1] See Defendant's Rule 56.1 Statement of Undisputed Material Facts at 1, hereafter "SOF".

[2] A copy of the Ordinance is attached as Exhibit 1 to the Declaration of Nancy Rotering, SOF, Exhibit A.

The City Council further recognized that recent incidents of gun violence "demonstrate that gun violence is not limited to urban settings, but is also, tragically, a reality in many suburban and small town locations as well." Id.

The City of Highland Park's Ordinance defines an "Assault Weapon" as a semi-automatic rifle, pistol, or shotgun with the capacity to accept more than ten rounds of ammunition and at least one of five described features: (1) A pistol grip without a shoulder stock; (2) A protruding grip for the non-trigger hand; (3) a folding, telescoping or thumbhole stock; (4) a barrel shroud; or (5) a muzzle break of compensator. Id.

The Ordinance then lists a series of models of rifles, pistols and shotguns which exhibit these features. These include, but are not limited to, the Bushmaster XM15 rifle, the MAC-10 and MAC-11 pistols, and the Streetsweeper shotgun. Id.[3] The Ordinance defines a "Large Capacity Magazine" as "any ammunition feeding device with the capacity to accept more than ten rounds." Id.

### The Concerns Voiced by the Mayor and Highland Park City Council

The City Council's prohibition on assault weapons and large capacity magazines was motived by both national and local events. Nationally, the City Council recognized the role these weapons had played in several recent, highly-publicized, mass shooting events. SOF 5. The City Council specifically referred to four such events including:

> **July 20, 2012** -- 12 people killed and 58 injured by a shooter using a Smith & Wesson M & P 15 semi-automatic weapon with a 100-round drum magazine at the Century Movie Theaters in Aurora, Colorado;

> **December 4, 2012** -- 28 people killed (including 20 schoolchildren) at the Sandy Hook Elementary School in Newtown, by a shooter using a Bushmaster XM 15 - EM25 semiautomatic rifle;

---

[3] (True and accurate pictures of each of the prohibited weapons are attached to the Declaration of Michael Kupka, Exhibit F to the City of Highland Park's Local Rule 56.1 Statement of Undisputed Facts.)

**January 1, 2013** -- 6 people killed and 14 injured, including Congresswoman Gabrielle Giffords in a supermarket parking lot in Casas Adobes, Arizona in the Tucson metropolitan area by a shooter using a Glock Model 19 9mm semiautomatic pistol with a large capacity magazine;

**June 7, 2013** -- 6 people killed and 2 wounded by gunfire at Santa Monica College in Santa Monica, California by a shooter using an AR-15 type semiautomatic rifle along with other firearms and large capacity magazines.

The City Council was also motivated by its own experience with gun violence in schools. In May 1988, Laurie Dann entered the Ravinia Elementary School in Highland Park with a firearm and attempted to detonate a bomb inside the school. Later that same day, Dann entered a second elementary school in neighboring Winnetka. There, she shot six elementary school students, killing one of them. SOF 24. The tragic incident in Newtown, Connecticut was thus particularly poignant to the members of the Highland Park City Council.

### Highland Park

Highland Park is a vibrant, suburban community with four community centers, three nursing homes, numerous shopping centers, and the Ravinia Festival, an outdoor music venue attracting thousands of visitors throughout the summer. SOF 22, 23. Highland Park has a population of approximately 29,000 residents; one-fourth of whom are under the age of 18. Approximately five percent are under the age of five. SOF 13. There are 15 schools in Highland Park, including Highland Park High School, and numerous elementary schools. SOF 21.

Highland Park also is fortunate to have a high concentration of police officers and a low incidence of violent crime. There are 57 sworn police officers for a ratio of nearly 2 officers for each 1,000 residents. SOF 14. The City has also issued nearly 3,000 burglar alarm permits. SOF 15. From 2008 to 2013, there were a total of 293 residential and commercial burglaries reported in the City. SOF 16. Of those, only two involved home invasions during which the

residents were at home.  SOF 17.  Since 2008, there have been just 16 criminal arrests involving firearms or ammunition.  SOF 18.

## PROCEDURAL HISTORY

On December 12, 2013, Arie S. Friedman, a medical doctor who resides in the City of Highland Park filed his Verified Complaint for Declaratory Judgment and Injunctive Relief in the Circuit Court of Lake County, Illinois.  Dr. Friedman's complaint alleged that the City of Highland Park's Ordinance violated constitutional rights under the Second Amendment.  Dr. Friedman also filed a Motion for Preliminary Injunction for December 20, 2013. (Dkt. 1)

On December 19, 2013, the City of Highland Park removed Dr. Friedman's action to the United States District Court for the Northern District of Illinois.  (Dkt. 1)  The Executive Committee assigned the case to this Court on December 31, 2013.  (Dkt. 13)  On January 7, 2014, the City of Highland Park then filed its Answer to the Verified Complaint.  (Dkt. 16)  The parties then briefed the Motion for Preliminary Injunction which the Court set for oral argument on February 27, 2014.  (Dkt. 17, 22, 26, 28)

Following argument on the Motion for Preliminary Injunction, the Court consolidated the motion for preliminary injunction with trial pursuant to Federal Rule of Civil Procedure 65(a)(2). (Dk. 34)  At the Status Hearing held on March 26, 2014, the Court directed the parties to conduct expert discovery and to file Cross-Motions for Summary Judgment by June 30, 2014.  (Dk. 38).

## ARGUMENT

### I.    Standard for Summary Judgment

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.  The moving party bears

the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but, rather, "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir.1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986)). A mere scintilla of evidence is not enough to oppose a motion for summary judgment, nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir.2000) (citations omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir.2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). *See also Sagar Megh Corporation v. United National Insurance Co.*, --- F.Supp.2d ----, 2013 WL 6080481 (N.D.Ill. November 19, 2013).

Even where factual disputes exist between the parties, summary judgment is appropriate where those disputes involve "legislative" rather than "adjudicative" facts. *See Illinois Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp.2d 928, 932 (N.D. Ill. 2014). Legislative facts are those "which have relevance to . . . the lawmaking process . . . in the enactment of a legislative body." *Id.* (citing Fed.R.Evid.201(a) advisory committee note.) Here, the parties dispute the "facts and data justifying the . . . [O]rdinance." *Id.* at 932. "Thus, because '[t]he constitutionality of the challenged statutory provisions does not present factual questions for determination in a trial' resolving this case at summary judgment instead of proceeding to trial is the proper course of action." *Id.* at 932 (quoting *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012).

II.     **The City of Highland Park's Limited Restrictions on Highly Dangerous**
        **Weapons Do Not Violate Dr. Friedman's Constitutional Rights.**

The Second Amendment to the United States Constitution provides:

> A well regulated Militia being necessary to the security of a free
> State, the right of the people to keep and bear Arms, shall not be
> infringed.

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held, for the

first time, that the Second Amendment included "an individual right to possess and carry

weapons" for the purpose of self-defense. *Id.* at 599, 628. The Court also recognized, however,

that this right was not unlimited, and that there was still broad ground for permissible regulation

of firearms and their use. As the Court explained: "[f]rom Blackstone through the 19th-century

cases, commentators and courts routinely explained that the right was not to keep and carry any

weapon whatsoever in any manner whatsoever for whatever purpose." *Id.* at 626. The Court

reaffirmed this assurance in *McDonald* and emphasized that the Second Amendment "does not

imperil every law regulating firearms" and that "[s]tate and local experimentation with

reasonable firearm regulations will continue under the Second Amendment." *McDonald*, 130

S.Ct. at 3046-47.

In the wake of *Heller*, the Seventh Circuit, along with most Courts of Appeals to consider

the issue, has adopted a two-pronged inquiry to evaluate a claim under the Second Amendment.

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011). *See also United States v. Marzzarella*,

614 F.3d 85 (3rd Cir. 2010); *United States v. Reese*, 627 F.3d 792 (10th Cir. 2010); *Heller v.*

*District of Columbia ("Heller II")*, 670 F.3d 1244 (D.C. Cir. 2011); *United States v. Chovan*,

735 F.3d 1127 (9th Cir. 2013); *United States v. Chester*, 628 F.3d 673 (4th Cir. 2010); *United*

*States v. Decastro*, 628 F.3d 160 (2d Cir. 2012).

Under this two-pronged approach, the Court must first determine whether the regulation affects activity protected by the Second Amendment. *Ezell*, 651 F.3d at 701. If the challenged law does not burden a right or conduct protected by the Second Amendment, then the inquiry is over and the regulation is constitutional. *Id.* at 703.

If the Court determines that challenged law burdens conduct protected by the Second Amendment, the Court must then consider whether "the strength of the government's justification for restricting the exercise of Second Amendment rights" merits the burden imposed. As the Seventh Circuit explained in *Ezell* "the rigor of this judicial review will depend on how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right." 651 F.3d at 703.

Notably, nothing in *Heller* can be read to guarantee "self-defense" as a right in and of itself. Nor can *Heller* be read to guarantee an individual right to possess whatever firearm a citizen subjectively perceives to necessary or useful. Instead, the Supreme Court expressly stated that the rights embodied by the Second Amendment have not historically been understood to be "a right to keep and carry any weapon whatsoever." 544 U.S. at 626. Read in this light, Plaintiffs constitutional claims must fail as a matter of law. As set forth below, the Ordinance does not burden any rights under the Second Amendment but instead merely regulates a small subclass of weapons that have been demonstrated over and over again to be unreasonably dangerous.

A.     **Highland Park's Ordinance Does Not Burden Rights Under the Second Amendment.**

The Supreme Court has identified three factors to consider in determining whether a law implicates Second Amendment rights. First, the Second Amendment only applies to those firearms which are commonly used for lawful purposes. *Heller*, 544 U.S. at 624-25 ("the Second

Amendment's operative clause furthers the purpose announced in its preface" by guaranteeing access to the type of arms "in common use at the time for lawful purposes like self-defense"); at 627 ("the sorts of weapons protected were those in common use at the time.") Second, while all firearms are dangerous, the Second Amendment does not protect weapons that are recognized as abnormally "dangerous or unusual." *Id.* This includes, as the Court noted, weapons "most useful in military service" such as the M-16 military assault rifle. *Id.* Third, the Court recognized that the Second Amendment rights enumerated in Heller derived from the concept of self-defense, and, therefore, a nexus to "self defense" was a "central component" of any individual Second Amendment right. *Id.* at 599. Evaluating each of these criteria in turn demonstrates that the City of Highland Park is entitled to summary judgment as a matter of law.

1. **Assault Weapons are Not the Type of Commonly Used Weapon Described in *Heller.***

In *Heller*, the Supreme Court struck down the District of Columbia's complete ban on handguns, in part because the weapons at issue had been commonly used since the nation's founding. 554 U.S. at 624, 627. Here, as a threshold matter, it is difficult to determine the number of assault weapons currently in use in the United States. Gun manufacturers do not generally release their sales data. Beyond this, many of those manufactured are illegally trafficked in Mexico.[4]

Although assault weapons have become more popular recently, the best evidence is that assault weapons of the type covered by the Ordinance make up only one or two percent of privately-owned firearms in the United States. This is far different than the handguns at issue in

---

[4] To support their contention that assault weapons are in common use, Plaintiffs rely upon a number of surveys that are severely methodology flawed and are therefore irrelevant. (See e.g. Declaration of Gretchen Cusick, Exhibit E to Defendant's Rule 56.1 Statement of Undisputed Material Facts.)

*Heller* which were the most popular firearm in the country and one typically used for self-defense from the advent of the Second Amendment to the present day.

In further contrast to handguns, while assault weapons make up a tiny fraction of guns in lawful use, they are disproportionately represented in criminal activity. Assault weapons constitute just one to two percent of all firearms in use. *SOF* 55. Assault weapons, however, make up as much as eight percent of guns used in crimes and account for 16 percent of guns used to murder police officers. *SOF* 62.

### 2. Assault Weapons are Dangerous and Unusual

AR-15 semi-automatic rifles such as the Smith & Wesson M & P 15 owned by Dr. Friedman are "the civilian version of the military's M-16 rifle." *Heller II*, 670 F.3d at 1263. As the court noted in *Heller II*, "[a]lthough semi-automatic firearms, unlike automatic M-16s, fire only one shot with each pull of the trigger, semi-automatics still fire almost as rapidly as automatics." *Id.* (quotations omitted). The *Heller II* court found that a fully automatic UZI machine gun that "was emptied in slightly less than two seconds on full automatic, while the same magazine was emptied in just five seconds on semi-automatic." *Id.* Accordingly, the court concluded "it is difficult to draw meaningful distinctions between the AR-15 and the M-16." *Id.*

Here, the Highland Park Ordinance regulates only those semi-automatic firearms that include one of five additional features. Each of these features, such as a muzzle break, a barrel shroud, or a telescoping stock, has a military heritage and was designed for use in combat rather than self-defense in the home. *SOF* 40-46. When combined with any of these five features prohibited under the Ordinance, therefor, the firearm takes on a military characteristic and is far more dangerous and powerful than necessary for ordinary home defense.

3.   **Assault Weapons are, by their very nature, not effective for self-defense.**

Semi-automatic weapons are designed for use in spaces much larger than a house or apartment. *SOF* 64. AR-15 type platforms are not intended for self-defense but instead are based on military designs. As a result, they are not appropriate for use in confined spaces like a typical living room, bedroom or hallway. *SOF* 68. Beyond this, because responsible gun owners will lock their firearms and store them securely, a rifle is much less accessible in most emergency situations than a handgun. *SOF* 66.

Overwhelming firepower is also unnecessary in a community like Highland Park. In the past five years, Highland Park has encountered only two home burglaries in which a resident was present. *SOF* 17. Police have issued nearly 3000 permits for burglar alarms and the average response time to a 911 emergency call is four minutes and 20 seconds. *SOF* 15, 20. Further, Highland Park has not had a homicide since June 2003 and has only had a total of four dating back to 1996. *SOF* 19. The idea that a homeowner would need a pistol grip, muzzle break or barrel shroud or a large capacity magazine to safely defend his or her home, however sincerely held that subjective belief might be, is incredible. A subjective desire to possess a particular weapon for self-defense, no matter how sincerely held, does not establish a constitutional right.

III.   **Even if this Court were to find that the Ordinance implicates the Second Amendment, the Ordinance would still survive constitutional review.**

A.   **Courts have regularly applied intermediate scrutiny to Second Amendment challenges.**

Because it was faced with a categorical handgun ban in *Heller* and *McDonald*, the Supreme Court did not provide guidance to lower courts on what constitutional scrutiny to apply when confronted with legislation that creates a burden upon rights implicated by the Second Amendment. *Kachalsky v. County of Westchester*, 701 F.3d 81, 89 (2d Cir. 2012), *cert. denied*

133 S. Ct. 1806 (2013). In *Ezell*, the Seventh Circuit joined a number of other circuits in holding

that an intermediate level of scrutiny should be applied and the level of that scrutiny must depend

on the nature of the impact on the Second Amendment Right. Ezell, 651 F.3d at 706. Thus, "a

severe burden on the core Second Amendment right of armed self-defense will require an

extremely strong public-interest justification and a close fit between the government's means and

its end." 651 F.3d at 708. On the other hand, where a court considers "laws restricting activity

lying closer to the margins of the Second Amendment right, laws that merely regulate rather than

restrict, modest burdens on the right may be more easily justified." *Id.*

In *Heller II,* the D.C. Circuit applied intermediate scrutiny to a ban on assault weapons

and large capacity magazines. 670 F.3d 1244, 1261. The court there noted that "[u]nlike the law

held unconstitutional in *Heller*, the laws at issue here do not prohibit the possession of 'the

quintessential self-defense weapon," to wit, the handgun." 670 F.3d at 1261-62 (quoting 554

U.S. at 629). In concluding that the District's assault weapons ban should be evaluated under

"intermediate scrutiny," the D.C. Circuit stated: "we are reasonably certain the prohibitions do

not impose a substantial burden upon that [Second Amendment] right." *Id.* at 1262.

At the very most, the Highland Park Ordinance marginally impacts the ability to obtain

firearms and magazines for lawful self-defense. In *Heller II,* the D.C. Circuit concluded that

these type of restrictions did rise to the level of a "substantial burden" because they did not

"prevent a person from keeping a suitable and commonly used weapon for protection in the

home or for hunting, whether a handgun or a non-automatic long gun." 670 F.3d at 1262. *See*

*also Shew v. Malloy*, --F. Supp.2d, -- 2014 WL 346859 (D.Conn. January 30, 2014).

As in *Heller*, the restrictions imposed by the Ordinance do not substantially burden any

right under the Second Amendment. At most, the Ordinance restricts a subclass of one or two

percent of privately-owned firearms. Residents of Highland Park have hundreds if not thousands of alternative firearms to choose from. The Ordinance merely regulates the choices available to residents and does not impose a "severe burden" on the exercise of these rights. For this reason, *Heller* and every court to consider constitutional scrutiny of prohibitions of assault weapons or large capacity magazines have applied intermediate scrutiny rather than the strict scrutiny advocated by the Plaintiffs. *See e.g. Kampfer v. Cuomo,* -- F. Supp.2d --, 2014 WL 49961 (W.D.N.Y. 2014) (assault weapon prohibitions "do not create a categorical ban on an entire class of weapons, and ample firearms remain available to carry out the 'central component of the Second Amendment right: self defense"); *New York State Rifle and Pistol Ass'n, Inc. v. Cuomo,* -- F. Supp.2d --, 2013 WL 690995 (W.D.N.Y. 2013) (restrictions that impose only modest burdens (because they do leave open ample alternative channels) are judged under a mild form of intermediate scrutiny"); *Tardy v. O'Malley,* -- F.Supp.2d --, No. 1:13-CV-02841 (D.Md. October 1, 2013) (ban on assault weapons subject to intermediate scrutiny); *Fyock v. City of Sunnyvale,* -- F. Supp.2d --, 2014 WL 984162 (N.D. Cal. March 5, 2014) (applying intermediate scrutiny in upholding a ban on large capacity magazines); (limitation of magazine capacity to 15 rounds "examine[d] . . . under the intermediate scrutiny test.")

### B.    The Ordinance is Substantially Related to Highland Park's Compelling Interest in Public Safety.

Under intermediate scrutiny, the Court's task is to assess whether a law is "substantially related to the achievement of an important government objective." *Kachalsky v. County of Westchester,* 701 F.3d 81, 96 (2nd Cir. 2012). There can be no doubt that Highland Park has an important, if not compelling interest, in the public safety of its citizens and police officers alike.

For this reason, every court to have considered a ban on assault weapons similar to the one imposed by Highland Park, has upheld the ban. *See e.g. People v. James,* 174 Cal.App.4th

662 (3rd Dist. 2009); *People v. Zondorak*, 220 Cal.App.4th 829 (4th Dist. 2013); *Fyock v. City of Sunnyvale*, -- F.Supp.2d --, 2014 WL 984162 (N.D. Cal. March 5, 2014); *Shew v. Malloy*, -- F.Supp.2d --, 2014 WL 346859 (D. Conn. January 30, 2014); *Heller II,* 670 F.3d 1244 (D.C.Cir. 2011); *Kampfer v. Cuomo*, -- F. Supp. 2d --, 2014 WL 49961 (N.D.N.Y. January 7, 2014); *NYS Rifle and Pistol Ass'n, Inc. v. Cuomo*, -- F.Supp.2d --, 2013 WL 6909955 (W.D.N.Y. December 31, 2013); *Colorado Outfitters Ass'n v. Hickenlooper*, -- F.Supp.2d --, No. 13-CV-01300-MSK-MJW (D. Colo. June 26, 2014) (upholding ban on 15 round magazines).[5]

The D.C. Circuit considered exactly this type of prohibition on semi-automatic assault weapons and large capacity magazines in *Heller II.* Reviewing the ban under intermediate scrutiny, the court there concluded "the military features of semi-automatic assault weapons are designed to enhance their capacity to shoot multiple human targets very rapidly." *Id.* at 1262. The court also noted that the Supreme Court had suggested that "M-16 rifles and the like' may be banned because they are 'dangerous and unusual.'" *Id.* (quoting 554 U.S. at 627). The court found that semi-automatic assault weapons, however, functioned in practice nearly identically to the M-16. The court concluded, therefore, that the District of Columbia's ban on assault weapons and large capacity magazines "is likely to promote the Government's interest in crime control." *Id.* The District of Columbia, therefore, met its burden under intermediate review.

Here, the City of Highland Park's Ordinance must similarly clear intermediate review. The Ordinance limits only a tiny sliver of highly dangerous weapons which have been tragically used repeatedly in mass shooting events. These weapons are also statistically far more likely to be used to murder police officers than their percentages in the law-abiding population would suggest. Like the Ordinance at issue in *Heller II,* Highland Park's ordinance meets its burden under intermediate review and is closely related to the City's important interest in public safety.

---

[5] A copy of this recent opinion is attached as Exhibit H to Defendants Rule 56.1 Statement of Facts.

## CONCLUSION

The City of Highland Park's Ordinance banning semi-automatic assault weapons and large capacity magazines does not implicate the Plaintiffs' Second Amendment rights, let alone substantially burden the exercise of those rights. As such, the Ordinance withstands even heightened scrutiny and substantially advances Highland Park's important interest in the safety of its residents and its police officers. Accordingly, Defendant, the City of Highland Park, respectfully requests that this Court enter summary judgment as a matter of law in its favor.

DATE: June 30, 2014                     CITY OF HIGHLAND PARK


                                        By: /s/ Christopher B. Wilson
                                            One of Its Attorneys

Christopher B. Wilson, ARDC No. 06202139
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, IL 60603
Telephone: (312) 324-8400
Fax: (312) 324 - 9400
Cwilson@perkinscoie.com

Steven M. Elrod
Christopher James Murdoch
Hart M. Passman
Holland & Knight, LLP
131 South Dearborn Street
30th Floor
Chicago, Illinois 60603
(312) 263-3600
Steven.elrod@hklaw.com
Chris.murdoch@hklaw.com
Hart.passman@hklaw.com

## CERTIFICATE OF SERVICE

I, Christopher B. Wilson, an attorney, certify that on June 30, 2014, I caused the foregoing **DEFENDANT CITY OF HIGHLAND PARK'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT t**o be filed pursuant to the Court's CM/ECF system and served via the Court's CM/ECF System on the following:

James B. Vogts
Swanson, Martin & Bell, LLP
330 N. Wabash, Suite 3300
Chicago, Illinois 60611
(312) 222-8517
jvogts@smbtrials.com

Brett Michael Henne
Swanson, Martin & Bell, LLP
1860 West Winchester Road
Suite 201
Libertyville, IL 60048
(847) 949-0057
bhenne@smbtrials.com

Andrew Arthur Lothson
Swanson, Martin & Bell, LLP
330 N. Wabash, Suite 3300
Chicago, Illinois 60611
alothson@smbtrials.com

Alexander David Marks
Burke, Warren, MacKay & Serritella, P.C.
330 North Wabash Avenue
22nd Floor
Chicago, IL 60611
(312) 840-7000
amarks@burkelaw.com

/s/ Christopher B. Wilson

LEGAL122557296.2