# EXHIBIT A

## DECLARATION OF NANCY ROTERING

I, Nancy Rotering, under penalty of perjury as set forth in 28 U.S.C. § 1746 declare as follows:

1. I serve as the Mayor of the City of Highland Park, Illinois ("*City*"). I have served the City as Mayor since May 2011. Prior to being elected as Mayor, I served as a member of the City Council from May 2009 until May 2011.

2. I have personal knowledge of the matters set forth in this Affidavit and can testify competently to such matters.

3. I was born in the City of Cincinnati, Ohio in 1961 and have lived in Highland Park for all but 18-years of my life.

4. As the legislative body for the City, the City Council is responsible for making policy and enacting laws that protect and preserve the public health, safety, and welfare of City residents, businesses, and visitors. Specifically, the City Council has the duty to prevent, to the greatest extent practicable, the commission of violent crimes within the City.

5. On June 24, 2013, the City Council adopted City Ordinance No. 68-13, prohibiting the manufacture, sale and possession of assault weapons and large capacity magazines within the City ("*Ordinance*"). A true and correct copy of the Ordinance, which bears my signature, is attached to this Affidavit as Exhibit A.

6. The City modeled its Ordinance after Cook County's assault weapon ban; with only minor non-substantive exceptions, the City's Ordinance is identical to the County's.

7. The City deliberately chose Cook County's ordinance as a model because it has recently survived equal protection and vagueness challenges before the Illinois Supreme Court.

8. As set forth in the Ordinance, the City Council believes that assault weapons pose an undue threat to public safety for the residents, property owners and visitors to the City.

9. The City Council also expressed its concern that the recent mass shooting tragedies in Aurora, Colorado, Newtown, Connecticut, Tucson, Arizona and Santa Monica, California, could occur in Highland Park, unless proper public safety measures are taken. As Mayor, and as a mother of four, I am particularly concerned about preventing a school shooting similar to the massacre at Sandy Hook Elementary School in Newtown. That is what was on my mind throughout our consideration of the Ordinance: how unlikely an assault weapon massacre was in Newtown and how similar our communities are. I could not shake the thought that we could just as easily be those panicked and grief-stricken parents. In a similar vein, I wrote a letter to the Mayor of Aurora, Colorado, in the wake of their gun-related tragedy, empathizing with the agony his community was experiencing. Lastly, the tragedy that occurred when Laurie Dann attempted to ignite an incendiary device at one of our Highland Park elementary schools, then went on a shooting rampage at another school in nearby Winnetka was also on my mind. My concern for how vulnerable our schools and schoolchildren are played into our need to pass the Ordinance.

10. The City Council believes that the City is not immune to gun violence, particularly gun violence involving assault weapons, and that the weapons pose a dangerous threat in the City and other suburban areas.

_____
Nancy Rotering
Mayor
City of Highland Park

#27507543_v1

ORDINANCE NO. 68-13

AN ORDINANCE AMENDING CHAPTER 134 OF "THE HIGHLAND PARK CODE OF 1968," AS AMENDED, REGARDING ASSAULT WEAPONS

WHEREAS, Chapter 134 of "The Highland Park Code of 1968," as amended (*"City Code"*), regulates the manufacture, sale, and possession of firearms in the City; and

WHEREAS, the Constitution of the United States of America and the Constitution of the State of Illinois afford certain protections related to the ownership of firearms; and

WHEREAS, in *District of Columbia v. Heller*, the United States Supreme Court recognized that the Constitutional protections related to firearm ownership is not unlimited, and can be subject to certain types of governmental regulations; and

WHEREAS, in its *Heller* decision, the United States Supreme Court specifically acknowledged that the protections afforded by the Second Amendment to the Constitution of the United States does not extend to all types of firearms; and

WHEREAS, many courts throughout the nation have upheld local regulations restricting or prohibiting the ownership or possession of assault weapons, including, without limitation, the State of Illinois Appellate Court, the United States District Court for the District of Columbia, and the Court of Appeals for the State of California; and

WHEREAS, recent incidents in Aurora, Colorado; Newtown, Connecticut; Tucson, Arizona; and Santa Monica, California demonstrate that gun violence is not limited to urban settings, but is also, tragically, a reality in many suburban and small town locations as well; and

WHEREAS, the City Council has determined that assault weapons are not traditionally used for self-defense in the City of Highland Park, and that such weapons pose an undue threat to public safety to residents, property owners, and visitors within the City of Highland Park; and

WHEREAS, the City has previously encouraged the Governor and the Illinois General Assembly to enact statewide legislation banning the sale and possession of assault weapons; and

WHEREAS, to date, the State has failed to enact a statewide ban on the sale or possession of assault weapons; and

WHEREAS, on May 31, 2013, the Illinois General Assembly approved House Bill 183, as amended, which Bill contains a provision that would preempt the home rule authority of the City to regulate the possession or ownership of assault weapons, unless the City adopts such a regulation not later than 10 days after House Bill 183 becomes law; and

WHEREAS, pursuant to the home rule powers of the City, and in order to protect both the home rule authority of the City and the public safety and welfare, the City Council desires to amend Chapter 134 of the City Code to prohibit the manufacture, sale, ownership, acquisition, or possession of assault weapons within the City; and

WHEREAS, the City Council has determined that it will serve and be in the best interest of the City and its residents to amend the City Code pursuant to this Ordinance;

NOW, THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF HIGHLAND PARK, LAKE COUNTY, STATE OF ILLINOIS, as follows:

SECTION ONE: RECITALS. The foregoing recitals are incorporated into, and made a part of, this Ordinance as the findings of the City Council.

SECTION TWO: FIREARMS CONTROL. Chapter 134, entitled "Handgun Control," of Title XIII, entitled "Misdemeanors," of the City Code is hereby re-titled "Firearms Control".

Exhibit 1

SECTION THREE: ASSAULT WEAPONS AND LARGE CAPACITY MAGAZINES. Chapter 134, entitled "Firearms Control," of Title XIII, entitled "Misdemeanors," of the City Code is hereby amended to add a new Section 134.010, which Section 134.010 hereafter reads as follows:

"Sec. 134.010 Assault Weapons and Large Capacity Magazines.

(A) Whenever the following words and phrases are used, they shall, for purposes of this Section 134.010, have the meanings ascribed to them in this Section 134.010(A), except when the context otherwise indicates.

(1) "Assault Weapon" means

(a) A semiautomatic rifle that has the capacity to accept a large capacity magazine detachable or otherwise and one or more of the following:

(i) Only a pistol grip without a stock attached;

(ii) Any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

(iii) A folding, telescoping or thumbhole stock;

(iv) A shroud attached to the barrel, or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel; or

(v) A muzzle brake or muzzle compensator;

(b) A semiautomatic pistol or any semi-automatic rifle that has a fixed magazine, that has the capacity to accept more than ten rounds of ammunition;

(c) A semiautomatic pistol that has the capacity to accept a detachable magazine and has one or more of the following:

(i) Any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

(ii) A folding, telescoping or thumbhole stock;

(iii) A shroud attached to the barrel, or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel;

(iv) A muzzle brake or muzzle compensator; or

(v) The capacity to accept a detachable magazine at some location outside of the pistol grip;

(d) A semiautomatic shotgun that has one or more of the following:

(i) Only a pistol grip without a stock attached;

(ii) Any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

(iii) A folding, telescoping or thumbhole stock;

2

  (iv) A fixed magazine capacity in excess of five rounds; or

  (v) An ability to accept a detachable magazine;

 (e) Any shotgun with a revolving cylinder;

 (f) Conversion kit, part or combination of parts, from which an assault weapon can be assembled if those parts are in the possession or under the control of the same person;

 (g) Shall include, but not be limited to, the assault weapons models identified as follows:

  (i) The following rifles or copies or duplicates thereof:

   (A) AK, AKM, AKS, AK-47, AK-74, ARM, MAK90, Misr, NHM 90, NHM 91, SA 85, SA 93, VEPR;

   (B) AR-10;

   (C) AR-15, Bushmaster XM15, Armalite M15, or Olympic Arms PCR;

   (D) AR70;

   (E) Calico Liberty;

   (F) Dragunov SVD Sniper Rifle or Dragunov SVU;

   (G) Fabrique National FN/FAL, FN/LAR, or FNC;

   (H) Hi-Point Carbine;

   (I) HK-91, HK-93, HK-94, or HK-PSG-1;

   (J) Kel-Tec Sub Rifle;

   (K) Saiga;

   (L) SAR-8, SAR-4800;

   (M) SKS with detachable magazine;

   (N) SLG 95;

   (O) SLR 95 or 96;

   (P) Steyr AUG;

   (Q) Sturm, Ruger Mini-14;

   (R) Tavor;

   (S) Thompson 1927, Thompson M1, or Thompson 1927 Commando; or

   (T) Uzi, Galil and Uzi Sporter, Galil Sporter, or Galil Sniper Rifle (Galatz).

(ii) The following pistols or copies or duplicates thereof:

    (A) Calico M-110;

    (B) MAC-10, MAC-11, or MPA3;

    (C) Olympic Arms OA;

    (D) TEC-9, TEC-DC9, TEC-22 Scorpion, or AB-10; or

    (E) Uzi.

(iii) The following shotguns or copies or duplicates thereof:

    (A) Armscor 30 BG;

    (B) SPAS 12 or LAW 12;

    (C) Striker 12; or

    (D) Streetsweeper.

"Assault weapon" does not include any firearm that has been made permanently inoperable, or satisfies the definition of "antique firearm," stated in Section 134.001 of this Chapter, or weapons designed for Olympic target shooting events.

(2) "Detachable Magazine" means any ammunition feeding device, the function of which is to deliver one or more ammunition cartridges into the firing chamber, which can be removed from the firearm without the use of any tool, including a bullet or ammunition cartridge.

(3) "Large Capacity Magazine" means any ammunition feeding device with the capacity to accept more than ten rounds, but shall not be construed to include the following:

(a) A feeding device that has been permanently altered so that it cannot accommodate more than ten rounds.

(b) A 22 caliber tube ammunition feeding device.

(c) A tubular magazine that is contained in a lever-action firearm.

(4) "Muzzle Brake" means a device attached to the muzzle of a weapon that utilizes escaping gas to reduce recoil.

(5) "Muzzle Compensator" means a device attached to the muzzle of a weapon that utilizes escaping gas to control muzzle movement.

(B) No person shall manufacture, sell, offer or display for sale, give, lend, transfer ownership of, acquire or possess any assault weapon or large capacity magazine. This Section 134.010(B) shall not apply to:

(1) The sale or transfer to, or possession by any officer, agent, or employee of the City or any other municipality or state or of the United States, members of the armed forces of the United States, or the organized militia of this or any other state; or peace officers, to the extent that any such person named in this Section 134.010(B)(1) is otherwise authorized to acquire or possess an assault weapon and/or large capacity magazine and does so while acting within the scope of his or her duties; or

(2) Transportation of assault weapons or large capacity magazine if such weapons are broken down and in a nonfunctioning state and are not immediately accessible to any person.

(C) Any assault weapon or large capacity magazine possessed, sold or transferred in violation of Section 134.010(B) of this Chapter is hereby declared to be contraband and shall be seized and destroyed of in accordance with the provisions of Section 134.010(E) of this Chapter.

(D) Any person who, prior to the effective date of this Section 134.010, was legally in possession of an assault weapon or large capacity magazine prohibited by this Section 134.010 shall have 90 days from the effective date of this Section 134.010 to do any of the following without being subject to prosecution hereunder:

(1) To remove the assault weapon or large capacity magazine from within the limits of the City;

(2) To modify the assault weapon or large capacity magazine either to render it permanently inoperable or to permanently make it a device no longer defined as an assault weapon or large capacity magazine; or

(3) To surrender the assault weapon or large capacity magazine to the Chief of Police or his or her designee for disposal as provided in Section 134.010(E) of this Chapter.

(E) The Chief of Police shall cause to be destroyed each assault weapon or large capacity magazine surrendered or confiscated pursuant to this Section 134.010; provided, however, that no firearm or large capacity magazine shall be destroyed until such time as the Chief of Police determines that the firearm or large capacity magazine is not needed as evidence in any matter. The Chief of Police shall cause to be kept a record of the date and method of destruction of each Firearm or Large Capacity Magazine destroyed pursuant to this Chapter.

(F) The violation of any provision of this Section 134.010 is a misdemeanor, punishable by not more than six months imprisonment or a fine of not less than $500 and not more than $1000, or both."

<u>SECTION FOUR</u>: <u>PUBLICATION</u>. The City Clerk shall be, and is hereby, directed to publish this Ordinance in pamphlet form pursuant to the Statutes of the State of Illinois.

<u>SECTION FIVE</u>: <u>EFFECTIVE DATE</u>. This Ordinance shall be in full force and effect from and after its passage, approval, and publication in the manner provided by law.

AYES: Mayor Rotering, Councilman Stone, Kaufman, Frank, Blumberg, Knobel

NAYS: Councilman Naftzger

ABSENT: None

PASSED: June 24, 2013

APPROVED: June 24, 2013

PUBLISHED IN PAMPHLET FORM: June 25, 2013

ORDINANCE NO.: 68-13

Nancy R. Rotering, Mayor

ATTEST:

Ghida S. Neukirch, City Clerk

#23629981_v4