IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Arie S. Friedman, M.D. and the Illinois State Rifle Association, | |
| Plaintiffs, | Case No. 13-cv-9073 |
| v. | Hon. John W. Darrah |
| City Of Highland Park, | |
| Defendant. | |

**DEFENDANT CITY OF HIGHLAND PARK'S RESPONSE
IN OPPOSITION TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT**

Despite Plaintiffs' arguments, the City of Highland Park's Ordinance neither violates the constitutional rights of its residents nor conflicts with the United States Supreme Court's holding in *District of Columbia v. Heller*, 544 U.S. 570 (2008) ("*Heller*"). Instead, Highland Park's decision to join the growing number of states and municipalities[1] which have restricted military-style, semi-automatic assault weapons and large capacity magazines was reasonable and based on its substantial concern for public safety. Highland Park reached its conclusion following the use of these assault weapons and large capacity magazines in mass shootings in Aurora, Colorado, Newtown, Connecticut and a tragic list of similar horrific events. For these reasons, every court to have considered similar legislation addressing either bans on assault weapons or large capacity magazines has upheld the rights of states and municipalities ability to do so. Plaintiffs' arguments have been rejected by court after court after court. In light of this

---

[1] As noted in Defendants' Memorandum of Law in Support of Its Motion for Summary Judgment, similar bans on "assault weapons" have been adopted by the states of Connecticut, Hawaii, Maryland, Massachusetts, New Jersey, and New York. Assault weapons are also prohibited in the District of Columbia, Boston, Cleveland, Columbus, Denver, New York City, as well as the City of Chicago and Cook County.

overwhelming consensus, Highland Park's Ordinance should be upheld and judgment should be entered in its favor as a matter of law.

## INTRODUCTION

In adopting its ban on "assault weapons" and "large capacity magazines," the City Council of Highland Park found that these weapons "pose an undue threat to public safety to residents, property owners, and visitors within the City of Highland Park." *Id.* The City Council further recognized that recent incidents of gun violence "demonstrate that gun violence is not limited to urban settings, but is also, tragically, a reality in many suburban and small town locations as well." *Id.*

Plaintiffs contend that Highland Park is powerless to address this potential gun violence because "the clear implication of *Heller* is that categorical protection of firearms ownership is not limited to handguns but extends to whatever types of firearms are commonly chosen by law-abiding persons for lawful uses." Plaintiffs' Memorandum of Law ("Pl. Memo") at p. 17. Yet, this reading of *Heller* is fundamentally flawed for at least two principal reasons. First, *Heller* did not create a Second Amendment right to possess any firearm for any purpose. Instead, only the right to own handguns for home defense was specifically addressed by the Supreme Court. The scope of the right to own other firearms for other purposes was left to the lower courts to determine on a case by case basis. Second, "assault weapons," which are not commonly used, are not appropriate for self defense in the home, and are used all too frequently for the mass murder of innocent citizens, fall outside the scope of the Second Amendment rights established by the Supreme Court in *Heller*. For this reason, every court to have considered either a ban on assault weapons or a ban on large capacity magazines, has upheld the ban against a constitutional challenge such as the Plaintiffs assert here. Assault weapons and large capacity magazines as a

matter of both fact and law are not the type of firearm which the Supreme Court held to be protected in *Heller*.

## KEY FACTS FOR CONSIDERATION

    A.    **Plaintiffs Cannot Establish that the Weapons Banned By the Ordinance are in "Common Use."**

Unlike the handguns at issue in *Heller*, which the Supreme Court noted "the American people consider to be the quintessential self defense weapon," the assault weapons at issue here have no historical tradition of civilian use in the United States. 544 U.S. at 629. Instead, "the semi-automatic assault weapon is typically recognized as a 'civilianized' version of a firearm originally manufactured for military use." SOF 51. In fact, the D.C. Circuit found in *Heller II,* AR-15 semi-automatic rifles such as the Smith & Wesson M & P 15 owned by Dr. Friedman are "the civilian version of the military's M-16 rifle." *District of Columbia v. Heller, ("Heller II")*, 670 F.3d 1244, 1263 (D.C. Cir. 2011). As the court noted in *Heller II*, "[a]lthough semi-automatic firearms, unlike automatic M-16s, fire only one shot with each pull of the trigger, semi-automatics still fire almost as rapidly as automatics." *Id.* (quotations omitted). The *Heller II* court therefore found that a fully automatic UZI machine gun that "was emptied in slightly less than two seconds on full automatic, while the same magazine was emptied in just five seconds on semi-automatic." *Id*. Accordingly, the court concluded "it is difficult to draw meaningful distinctions between the AR-15 and the M-16." *Id.* As Mark Jones, a former agent of the Bureau of Alcohol, Tobacco, Firearms & Explosives and currently a member of the University of Chicago Crime Lab concluded: when comparing the rate of fire of a "[f]ederally regulated, fully

automatic machine gun and a semi-automatic AR15-type rifle, the difference is minimal." SOF 49.[2]

In addition to the unique military design of these weapons, the Plaintiffs cannot meet their burden of showing that they are in "common use." James Yurgealitis, another career agent of the Federal Bureau of Alcohol, Tobacco, Firearms & Explosives noted in his affidavit that "it is difficult to determine how many assault weapons Americans currently own, in large part because most firearm manufacturers refuse to release data tracking their sales."[3] SOF 54. Complicating matters further, manufacturing statistics are not a reliable indicator because "we know that a great many of these [weapons] end up in Mexico." *Id.*

According to Mr. Yurgealitis, only an estimated 2 to 2.5 percent of all of the firearms in the United States would be considered "assault weapons" and even potentially subject to the Highland Park Ordinance.[4] SOF 55-56. When compared to the estimated 218 million privately owned firearms in the United States, this would constitute less than 5 million such firearms in circulation. SOF 56. As Mr. Yurgealitis concluded, "While this number is not insignificant, in my opinion it does not support the claims that assault weapons are 'in common use.'" *Id.*

Plaintiffs' data also indicate that the relative popularity of these weapons is an extremely recent phenomenon. Plaintiffs estimate that for the 23-year period between 1990 and 2012, domestic manufacturers produced roughly 5,128,000 weapons which would have met the definition of an "assault weapon." See Exhibit 2 to the Deposition of James Cucuruto. Of these, however, Plaintiffs admit that "approximately 3,457,230 AR-type rifles were produced" in the

---

[2] Plaintiffs have submitted a misleading video in which an instructor slowly shoots a semiautomatic weapon in comparison to a fully automatic weapon. Plaintiffs do not contend, nor could they, however, that the instructor is shooting as rapidly as possible. In *Heller II,* by contrast, the D.C. Circuit recognized that there is only a minimal difference in the actual rate of fire. 670 F.3d at 1263.)

[3] It is perhaps for this reason that Plaintiffs rely on records of the number of weapons "manufactured" rather than "owned" "sold" or "purchased."

[4] Only those semiautomatic weapons with one of five defined features are subject to the Highland Park Ordinance.

five years from 2008 to 2012. By Plaintiffs' own estimate, then, from 1990 to 2007, well less than 100,000 weapons were manufactured each year. *Id.* This would constitute less than half of one percent of the guns in the United States. Plaintiffs offer no support for their view that a recent spike in popularity would constitute a historical example of "common use."

### B. Assault Weapons are not Appropriate for Self Defense in the Home.

In addition to the fact that these firearms represent only a fraction of the total guns owned in the United States, they are also neither designed nor appropriate for self-defense in the home. In *Heller*, the Supreme Court discussed the unique attributes of a handgun for self-defense in overturning the District of Columbia's ban of these weapons:

> It is enough to note, as we have observed, that the American people have considered the handgun to be the quintessential self-defense weapon. There are many reasons that a citizen may prefer a handgun for home defense: It is easier to store in a location that is readily accessible in an emergency; it cannot easily be redirected or wrestled away by an attacker; it is easier to use for those without the upper-body strength to lift and aim a long gun; it can be pointed at a burglar with one hand while the other hand dials the police. Whatever the reason, handguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid.

554 U.S. at 629.

Assault weapons such as those banned by Highland Park, by contrast, share none of these attributes. They are not "readily accessible in an emergency" nor can they "be pointed at a burglar with one hand while the other hand dials in police." Instead, the assault weapons of the Highland Park ordinance are "copies of military firearms." SOF 34. "As such they retain a number of features originally designed to maximize their effectiveness in battle." *Id.* They are, by design, offensive in nature, rather than designed for defense of the home. SOF 32. An AR-15 type assault rifle is too long, too unwieldy and too powerful to constitute an optimal weapon for self-defense. SOF 64-70. These firearms are also difficult to store and maintain safely when

compared to the handguns at issue in *Heller* and *McDonald*.   SOF 66 - 67.  Long guns are also "not optimal for home defense because they are challenging to manipulate in the close confines found in homes."  SOF 68.

### C.   Assault Weapons Are Extremely Dangerous in the Wrong Hands.

Whatever their limitations for self-defense, however, assault weapons have proved to be extremely deadly in mass shootings.  While in general criminals are less likely to use a rifle or shotgun than a handgun, when assault weapons are used in mass shootings "the carnage that results is stunning."  SOF 63.  For example, the December 2012 incident in Newtown, Connecticut resulted in 29 casualties in just 10 minutes, 20 of these were schoolchildren.  The July 2012 incident in Aurora, Colorado left 99 people dead or wounded in just minutes.  *Id.*  Assault weapons are not used in all mass shooting events, but when they are a bad situation becomes much worse.  A survey of 93 mass shooting events between January 2009 and September 2013 revealed that 14 involved semi-automatic or fully automatic assault weapons.  SOF 58.  Those 14 events resulted in 151 % more casualties and 63 % more deaths than in incidents not involved assault weapons.  *Id.*   Accordingly, the assault weapons addressed by the Highland Park Ordinance are among the most dangerous which can be legally obtained in the United States.

Despite Plaintiffs' contention, however, the Supreme Court has noted that "unusual and dangerous" weapons are not protected by the Second Amendment.  The assault weapons at issue here are therefore neither commonly used nor appropriate for self-defense.  They are also unusually and tragically dangerous when used improperly.  There is no Second Amendment protection for such firearms and Highland Park has taken appropriate steps to ban these weapons.

**ARGUMENT**

I.  **Highland Parks Ban on "Assault Weapons" and "Large Capacity Magazines" Falls Outside the Scope of the Second Amendment Rights Established by *Heller* and *McDonald*.**

Plaintiffs contention that *Heller* established an absolute right to ownership of any "commonly owned" firearm fundamentally misreads the Supreme Court's decision. Although *Heller* held that a complete ban on handguns would violate the Second Amendment, the Court stopped far short of the sweeping pronouncement which Plaintiffs urge here. Instead, the Court expressly noted:

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.

*Id.* at 626. The Court reaffirmed this assurance in *McDonald v. City of Chicago,* __ U.S. __, 130 S. Ct. 3020 (2010), and emphasized that the Second Amendment "does not imperil every law regulating firearms" and that "[s]tate and local experimentation with reasonable firearm regulations will continue under the Second Amendment." *Id.* at 3046-47. Given this backdrop, the Seventh Circuit has established a two-part test for determining whether a given gun safety measure violates the Second Amendment. First, the court must determine if the subject matter even implicates the Second Amendment as a threshold matter. *Ezell,* 651 F.3d at 702-03. As the Seventh Circuit stated:

> Accordingly, if the government can establish that a challenged firearms law regulates activity falling outside the scope of the Second Amendment right as it was understood at the relevant historical moment—1791 or 1868—then the analysis can stop there; the regulated activity is categorically unprotected, and the law is not subject to further Second Amendment review.

*Id.* If the activity does fall within the scope of the Second Amendment, however, a further inquiry is needed. As the Seventh Circuit noted, some evaluation must be conducted of the

means used by the government and its relationship to the government's purpose or desired end. The court concluded that while strict scrutiny was not required, some sliding measure of intermediate scrutiny would be. Again, the court provided:

> Labels aside, we can distill this First Amendment doctrine and extrapolate a few general principles to the Second Amendment context. First, a severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end. Second, laws restricting activity lying closer to the margins of the Second Amendment right, laws that merely regulate rather than restrict, and modest burdens on the right may be more easily justified. How much more easily depends on the relative severity of the burden and its proximity to the core of the right.

*Id.* at 708. Thus, in order to evaluate Plaintiffs' challenge to the Highland Park Assault Weapons Ordinance, this Court must consider 1) whether the Second Amendment right to individual self defense of "hearth and home" has been implicated and if so 2) whether the means used is reasonable in light of the ends to be achieved. *See also United States v. Marzzarella*, 614 F.3d 85 (3rd Cir. 2010); *United States v. Reese*, 627 F.3d 792 (10th Cir. 2010); *Heller v. District of Columbia ("Heller II")*, 670 F.3d 1244 (D.C. Cir. 2011); *United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013); *United States v. Chester*, 628 F.3d 673 (4th Cir. 2010); *United States v. Decastro*, 628 F.3d 160 (2d Cir. 2012). Here, Highland Park's Ordinance satisfies both elements of this inquiry.

**II.     Because it is Limited to a Narrow Set of Unusually Dangerous Weapons, Highland Park's Ordinance Does Not Fall Within the Second Amendment.**

As the Seventh Circuit made clear in *Ezell,* if the Second Amendment is not implicated the inquiry must end there. The matters at issue are not constitutionally protected and no further review is required. *Ezell,* 651 F.3d at 703. Here, the Second Amendment is not implicated for three reasons: First, assault weapons are not in "common use" as that term was understood in *Heller*. Second, assault weapons are not appropriate for self-defense of the home -- the limited

Second Amendment right established by *Heller*. Third, assault weapons are "dangerous and unusual" and therefore do not fall within the scope of *Heller*.

### A. "Assault Weapons" are not in "common use."

Plaintiffs contend at length that because the Highland Park Ordinance bans certain types of "assault weapons" the Ordinance not only falls within the ambit of the Second Amendment but automatically constitutes a constitutional violation of that right. Nothing in *Heller,* however, supports this view. Instead, Plaintiffs must produce evidence that these weapons are "commonly sued" for "self-defense" as the Supreme Court described the handguns at issue in *Heller*. But the record, here establishes the opposite. Even accepting Plaintiff's statistics, "assault weapons" make up at most a tiny fraction of the more than 200 million firearms in the United States. At most, Plaintiffs contend that in the last 23 years, the gun industry manufactured approximately 5 million such firearms, or less than 3 percent. More revealing, of those 5 million, more than two-thirds were made in the last five years. Unlike *Heller*, then, there are no historical roots for these weapons. Instead, there is simply an extremely recent spike in relative popularity. Even taking this spike at its peak, Plaintiffs contend, at best, that roughly 10 percent of most recent guns manufactured fell into the "assault weapons" category. This is not enough to establish "common use" as a matter of law.

### B. "Assault Weapons" are not designed for "self-defense."

Setting aside the number of "assault weapons" alleged to be "in common use" in the United States today, the record is also far from clear that these weapons are used for "defense of the home" as the Second Amendment right was defined in *Heller*. As Highland Park's experts make clear, "assault weapons" such as the AR-type rifle are derived from military firearms. These weapons are, therefore, "offensive" in nature and ill-suited for home defense. AR-type

rifles are too long to use in close quarters. The bullets used are also too likely to penetrate walls and other objects. Beyond this, these weapons are difficult to store safely and to retrieve easily in the event of a home invasion. For any number of reasons, assault weapons are simply not designed or intended for defense of the home.

Semi-automatic weapons are designed for use in spaces much larger than a house or apartment. *SOF* 64. AR-15 type platforms are not intended for self-defense but instead are based on military designs. As a result, they are not appropriate for use in confined spaces like a typical living room, bedroom or hallway. *SOF* 68. Beyond this, because responsible gun owners will lock their firearms and store them securely, a rifle is much less accessible in most emergency situations than a handgun. *SOF* 66.

Plaintiffs contend that these weapons are used by police and other law enforcement officials and therefore they should be similar entitled to "assault rifles" such as the AR-15. Yet, this argument supports Highland Park, not the Plaintiffs. Police officers need these weapons because, unlike citizens, police may be required to intervene in a dangerous situation. Beyond this, police officers receive extensive training and can therefore use these weapons safely. Finally, police, unlike citizens, have the resources to store these weapons safely and to retrieve them as needed. The fact that police departments use these weapons, therefore, far from supporting Plaintiffs, demonstrates the unique circumstances under which these firearms would be appropriate.

Overwhelming firepower is also unnecessary in a community like Highland Park. In the past five years, Highland Park has encountered only two home burglaries in which a resident was present. *SOF* 17. Police have issued nearly 3000 permits for burglar alarms and the average response time to a 911 emergency call is four minutes and 20 seconds. *SOF* 15, 20. Further,

Highland Park has not had a homicide since June 2003 and has only had a total of four dating back to 1996. *SOF* 19. A subjective desire to possess a particular weapon for self-defense, no matter how sincerely held, does not establish a constitutional right.

Thus, Highland Park's Ordinance does not implicate conduct falling within the Second Amendment. At most, it restricts ownership of a narrow class of firearms that are neither designed for nor traditionally used as self-defense weapons. Instead, these are incredibly dangerous, offensive weapons which are based on military firearms such as the M-16 rifle. The weapons are issue are far different than the handguns at issue in *Heller* and *McDonald* and the Second Amendment rights at issue there are not burdened by Highland Park's Ordinance.

**D.    Large Capacity Magazines are not protected by the Second Amendment.**

Beyond the question of the nature and extent of "assault weapons," however, the Plaintiffs have not asserted any argument that "large capacity magazines" are protected by the Second Amendment. Both sides agree that a magazine is simply a container to hold a given number of rounds. Plaintiffs do not even contend as a threshold matter that they have a constitutional right to a certain number of rounds per magazine. Nor is there any logical basis on which they could make such a contention.

A limitation on the number of rounds in a magazine is just that -- a limit. It is not a bar or a ban on any particular type or caliber of bullet. At most, it provides a regulation on the number of bullets which may be attached to a firearm at a given time. Plaintiffs' brief is entirely silent on the constitutional implications of this 10-round limit.

Yet, Plaintiffs do admit that of 81 different mass shooting incidents it has analyzed, more than 25 percent -- 21 of the 81 incidents -- involved a large capacity magazine. Pl. Memo at 12. As Highland Park has noted, the importance of this restriction is to allow the victims of a mass

shooting event to flee or even to seize the perpetrator when he is forced to reload. This was the circumstance in Tucson, Arizona when the victims were finally able to subdue the assailant when he was forced to reload after killing 6 people and injuring 13 more including Congresswoman Gabrielle Giffords. Because the Plaintiffs are silent on the constitutional impact of Highland Park's limitation on large capacity magazines, Highland Park is entitled to summary judgment as a matter of law on this aspect of its Ordinance alone.

**III.    Even if the Ordinance implicates the Second Amendment, the Ordinance would still be Constitutional under the Standard of Intermediate Review.**

**A.    The Seventh Circuit has applied intermediate scrutiny to Second Amendment challenges.**

Even if this court were to accept Plaintiffs' contention that the Second Amendment is implicated by Highland Park's Ordinance, this would mark the beginning of the court's inquiry, not the end, as Plaintiffs' mistakenly contend. Instead, in *Ezell,* the Seventh Circuit joined every other court to consider restrictions on Second Amendment rights and held that an intermediate level of scrutiny should be applied to balance the end to be obtained and the means which the government seeks to apply. *Ezell*, 651 F.3d at 706. The Seventh Circuit proposed a sliding scale for this inquiry and that "laws restricting activity lying closer to the margins of the Second Amendment right, laws that merely regulate rather than restrict, modest burdens on the right may be more easily justified." *Id.*

As Highland Park noted in its Opening Brief, every court to consider a ban on assault weapons or large capacity magazines has applied this standard of intermediate scrutiny and every court has held that these restrictions do not violate the Second Amendment.

In *Heller II,* the D.C. Circuit applied intermediate scrutiny to a ban on assault weapons and large capacity magazines. 670 F.3d 1244, 1261. The court there noted that "[u]nlike the law

held unconstitutional in *Heller*, the laws at issue here do not prohibit the possession of 'the quintessential self-defense weapon,' to wit, the handgun." 670 F.3d at 1261-62 (quoting 554 U.S. at 629). In concluding that the District's assault weapons ban should be evaluated under "intermediate scrutiny," the D.C. Circuit stated: "we are reasonably certain the prohibitions do not impose a substantial burden upon that [Second Amendment] right." *Id.* at 1262.

At the very most, the Highland Park Ordinance marginally impacts the ability to obtain firearms and magazines for lawful self-defense. In *Heller II,* the D.C. Circuit concluded that these type of restrictions did rise to the level of a "substantial burden" because they did not "prevent a person from keeping a suitable and commonly used weapon for protection in the home or for hunting, whether a handgun or a non-automatic long gun." 670 F.3d at 1262. *See also Shew v. Malloy*, --F. Supp.2d, -- 2014 WL 346859 (D.Conn. January 30, 2014).

    **B.**    **This court should join every court to have applied intermediate review to a ban on "assault weapons" and "large capacity magazines" and hold that Highland Park's Ordinance is constitutional.**

As in *Heller*, the restrictions imposed by Highland Park's Ordinance do not substantially burden any right under the Second Amendment. At most, the Ordinance restricts a subclass of one or two percent of privately-owned firearms. Residents of Highland Park have hundreds if not thousands of alternative firearms to choose from. Indeed, even accepting Plaintiffs inflated statistics, less than 2.5 percent of the 218 million firearms in the United States would even be potentially subject to this Ordinance. Beyond this, the Ordinance merely regulates the choices available to residents and does not impose a "severe burden" on the exercise of these rights. For this reason, *Heller* and every court to consider constitutional scrutiny of prohibitions of assault weapons or large capacity magazines have applied intermediate scrutiny rather than the strict scrutiny advocated by the Plaintiffs. *See e.g. Kampfer v. Cuomo,* -- F. Supp.2d --, 2014 WL

-13-

49961 (W.D.N.Y. 2014) (assault weapon prohibitions "do not create a categorical ban on an entire class of weapons, and ample firearms remain available to carry out the 'central component of the Second Amendment right: self defense"); *New York State Rifle and Pistol Ass'n, Inc. v. Cuomo*, -- F. Supp.2d --, 2013 WL 690995 (W.D.N.Y. 2013) (restrictions that impose only modest burdens (because they do leave open ample alternative channels) are judged under a mild form of intermediate scrutiny"); *Tardy v. O'Malley*, -- F.Supp.2d --, No. 1:13-CV-02841 (D.Md. October 1, 2013) (ban on assault weapons subject to intermediate scrutiny); *Fyock v. City of Sunnyvale,* -- F. Supp.2d --, 2014 WL 984162 (N.D. Cal. March 5, 2014) (applying intermediate scrutiny in upholding a ban on large capacity magazines); (limitation of magazine capacity to 15 rounds "examine[d] . . . under the intermediate scrutiny test."); *People v. James*, 174 Cal.App.4th 662 (3rd Dist. 2009); *People v. Zondorak*, 220 Cal.App.4th 829 (4th Dist. 2013); *Shew v. Malloy*, -- F.Supp.2d --, 2014 WL 346859 (D. Conn. January 30, 2014); *Colorado Outfitters Ass'n v. Hickenlooper*, -- F.Supp.2d --, No. 13-CV-01300-MSK-MJW (D. Colo. June 26, 2014) (upholding ban on 15 round magazines).[5]

*Heller v. District of Columbia ("Heller II"),* 670 F.3d 1244 (D.C.Cir. 2011) is particularly instructive. There, the D.C. Circuit considered exactly the type of prohibition on semi-automatic assault weapons and large capacity magazines which Highland Park adopted. Reviewing the ban under intermediate scrutiny, the court there concluded "the military features of semi-automatic assault weapons are designed to enhance their capacity to shoot multiple human targets very rapidly." *Id.* at 1262. The court also noted that the Supreme Court had suggested that "M-16 rifles and the like' may be banned because they are 'dangerous and unusual.'" *Id.* (quoting 554 U.S. at 627). The court further found that semi-automatic assault weapons, however, functioned in practice nearly identically to the M-16. The court concluded,

---

[5] A copy of this recent opinion is attached as Exhibit H to Defendants Rule 56.1 Statement of Facts.

therefore, that the District of Columbia's ban on assault weapons and large capacity magazines "is likely to promote the Government's interest in crime control." *Id.* The District of Columbia, therefore, met its burden under intermediate review.

Here, the City of Highland Park's Ordinance similarly meets the standard of intermediate review established by *Ezell, Heller* and a dozen other subsequent cases. The Ordinance limits only a small number of highly dangerous weapons which have been tragically used repeatedly in mass shooting events. These weapons are also statistically far more likely to be used to murder police officers than their percentages in the law-abiding population would suggest. Like the Ordinance at issue in *Heller II,* Highland Park's ordinance meets its burden under intermediate review and is closely related to the City's important interest in public safety. Highland Park is entitled to summary judgment as a matter of law, and Plaintiffs Complaint should be dismissed with prejudice.

## CONCLUSION

The City of Highland Park's Ordinance banning semi-automatic assault weapons and large capacity magazines does not implicate Plaintiffs' Second Amendment rights, let alone substantially burden the exercise of those rights. As such, the Ordinance withstands even heightened constitutional scrutiny and substantially advances Highland Park's important interest in the safety of its residents and its police officers. Accordingly, Defendant, the City of Highland Park, respectfully requests that this Court deny Plaintiffs Motion for Summary Judgment and instead enter summary judgment as a matter of law in favor of the City of Highland Park.

```
```

DATE:  July 21, 2014                              CITY OF HIGHLAND PARK

                                                  By:  /s/ Christopher B. Wilson
                                                         One of Its Attorneys

Christopher B. Wilson, ARDC No. 06202139
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, IL  60603
Telephone:  (312) 324-8400
Fax:  (312) 324 - 9400
Cwilson@perkinscoie.com

Steven M. Elrod
Christopher James Murdoch
Hart M. Passman
Holland & Knight, LLP
131 South Dearborn Street
30th Floor
Chicago, Illinois 60603
(312) 263-3600
Steven.elrod@hklaw.com
Chris.murdoch@hklaw.com
Hart.passman@hklaw.com

-17-

## **CERTIFICATE OF SERVICE**

I, Christopher B. Wilson, an attorney, certify that on July 21, 2014, I caused the foregoing **DEFENDANT CITY OF HIGHLAND PARK'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT t**o be filed pursuant to the Court's CM/ECF system and served via the Court's CM/ECF System on the following:

| | |
|---|---|
| James B. Vogts<br>Swanson, Martin & Bell, LLP<br>330 N. Wabash, Suite 3300<br>Chicago, Illinois 60611<br>(312) 222-8517<br>jvogts@smbtrials.com | Brett Michael Henne<br>Swanson, Martin & Bell, LLP<br>1860 West Winchester Road<br>Suite 201<br>Libertyville, IL 60048<br>(847) 949-0057<br>bhenne@smbtrials.com |
| Andrew Arthur Lothson<br>Swanson, Martin & Bell, LLP<br>330 N. Wabash, Suite 3300<br>Chicago, Illinois 60611<br>alothson@smbtrials.com | Alexander David Marks<br>Burke, Warren, MacKay & Serritella, P.C.<br>330 North Wabash Avenue<br>22nd Floor<br>Chicago, IL 60611<br>(312) 840-7000<br>amarks@burkelaw.com |

/s/ Christopher B. Wilson_____

LEGAL122819794.1