IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARIE S. FRIEDMAN, M.D. and the Illinois State Rifle Association | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | No: 13-cv-9073 Hon. John W. Darrah |
| CITY OF HIGHLAND PARK, | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO MOTION TO STRIKE CERTAIN STATEMENTS OF MATERIAL FACT SUBMITTED BY DEFENDANT**

Plaintiffs Arie S. Friedman, M.D. and the Illinois State Rifle Association ("Plaintiffs") reply to Defendant's Response in Opposition to Plaintiff's Motion to Strike Certain Statements of Material Fact Submitted by Defendant ("Highland Park") (Def.'s Resp.) [Doc. 59].

**I.  Highland Park Has Not Met its Burden of Demonstrating that Expert Testimony Would Be Admissible at Trial.**

The expert declarations submitted by Highland Park in support of its motion for summary judgment do not satisfy the requirements of the rules of evidence. And now, when required to defend the declarations under the rules, Highland Park falls well short of the mark.

**(A)  Rule of Evidence 703 Requires a Showing that the Facts Relied on by an Expert Witness Be the Kind of Facts on Which Experts in the Field Reasonably Rely.**

The witness Declarations of Mark Jones and James Yurgealitis do not meet the requirements of Rule of Evidence 703 because there is no showing that certain factual materials on which they relied are the type of materials on which experts in the field reasonably rely. In fact, there is evidence that their reliance on the challenged materials is distinctly unreasonable

1

because the witnesses have acknowledged not knowing how the evidence was gathered and analyzed or what the evidence actually purports to represent.

Highland Park wrongly contends that Federal Rules of Evidence 703 only applies to matters to be submitted to a jury. (Def.'s Resp. at 7). But it is fundamental that evidence submitted at the summary judgment stage must be admissible at trial. *Woods v. City of Chicago*, 24 F.3d 979, 988 (7th Cir. 2000). And there is ample authority in which courts have first considered the admissibility of expert testimony under the rules of evidence before reaching the merits of summary judgment motions. *See e.g. Shrott v. Bristol-Myers Squibb Co.*, 2003 U.S. Dist. LEXIS 18890 at * 2 (Oct. 22, 2003 N.D. Ill.) *aff'd* 458 F.3d 940 (7th Cir. 2005) (Court must first determine the admissibility of relevant evidence presented by the parties before reaching the merits of summary judgment motion). Plaintiffs' motion to strike Highland Park statements of fact based on what they contend is inadmissible expert witness testimony is entirely proper. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible at trial".)

Rule of Evidence 703 states:

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

The case relied on by Highland Park for the proposition that Federal Rule of Evidence 703 "applies only to matters to be submitted to a jury" is not applicable here. (Def.'s Resp. at 7). In *Ambrose v. Roeckman*, 749 F.3d 615, 621 (7th Cir. 2014) the question was not whether Rule 703 applies in summary judgment proceedings or whether the expert's reliance on facts that

would "otherwise be inadmissible" was reasonable. Instead, *Ambrose* addressed application of the third sentence of Rule 703 and whether the plaintiff was prejudiced by disclosure of the otherwise inadmissible evidence on which the expert relied. The evidence at issue was prior incidents of sexual abuse by the plaintiff. The court found that the plaintiff was not prejudiced by disclosure of the evidence because it was admitted "not to prove the abuse allegations, but to cast light on the information considered by" the expert. *Id*. The court correctly recognized that "[w]hen the judge sits as the trier of fact, it is presumed that the judge will understand the limited reason for the disclosure of the underlying inadmissible information and will not rely on that information for any improper purpose". *Id*.

Here, Plaintiffs do not argue they are prejudiced by expert witness disclosure of otherwise inadmissible evidence supporting an opinion. Plaintiffs contend that there has been no threshold showing that Highland Park's experts can properly rely on the otherwise inadmissible evidence.

### (1) The Testimony of James Yurgealitis regarding the Number of "Assault Weapons" Owned in the United States Is Inadmissible.

James Yurgealitis' analysis of the approximate number of "assault weapons" owned in the United States is inadmissible because there is no showing that the facts he relied on are the "kinds of facts" that "experts in the particular field would reasonably rely on." Fed. R. Evid. 703. Thus, "facts" that support Yurgealitis' analysis remain hearsay and are inadmissible. And because the source for the hearsay (information allegedly posted on an NRA-affiliated website) has not been produced in discovery or submitted to the Court, there is no basis on which to even draw an inference that the facts are of a kind on which experts in the field reasonably rely.[1]

---

[1] Yurgealitis' qualifications to provide an opinion on this subject also have not been demonstrated. His expertise lies in firearms forensics, including firearms identification, serial

As Plaintiffs established in their motion and Highland Park does not deny, there is no way to know what definition of "assault weapons" was used by the NRA or what year or years the NRA estimates addressed. These facts are important because Yurgealitis compares the undocumented NRA estimates to 2004 firearms ownership estimates found elsewhere. (Doc. 51-1). If the NRA estimates do not address 2004 ownership percentages, Yurgealitis' calculation cannot be shown to be accurate or reliable. And there is no way to assess whether the NRA estimates are the kind of evidence on which experts in the field reasonably rely. Again, the burden was on Highland Park and its expert to make this showing, but they failed to do so.

Highland Park's representation that it is "highly likely that Plaintiffs had access" to the NRA website estimates because one of their experts is the Director of NRA Museums is speculation. (Def.'s Resp. at 11). It is also false. Although Plaintiffs' counsel was able to gather many of the materials relied on by Yurgealitis before his deposition was taken, counsel tried but was not able to find the website information. In any event, it was Highland Park's burden to produce its evidence pursuant to Plaintiffs requests under Rules 30(b)(2) and 34, and it did not do so. (Doc. 51-2).

Finally, Plaintiffs are not complaining that the NRA estimates are "unreasonable or unreliable", as Highland Park argues. (Def.'s Resp. at 11). Plaintiffs cannot voice that complaint because they have not seen the estimates and do not know how they were derived. The unavailability of the estimates also prevents the Court from making inquiry into their reliability.

---

number restoration, the technical aspects of firearms operating systems and ammunition components. (*See* Exhibit A – Yurgealitis Deposition, pp. 13 -17). And all but three paragraphs of his 42 paragraph Declaration address these subjects. (Doc. 51-3). The three paragraphs addressing his analysis of the number of "assault weapons" in the United States (34, 35 and 36) seem tacked on because there is nothing stated in the Declaration demonstrating any "knowledge, skill, experience, training or education", which gives Yurgealitis the expertise to reliably analyze and calculate that number.

*See Cummins v. Lyle Industries*, 93 F.3d 362, 371-72 (7th Cir. 1996) (expert's failure to identify persons making statements precluded finding under Rule 703 of reasonable reliance on the statements).

The consequence for Highland Park's failure to produce documentation of the NRA estimates includes "prohibiting the disobedient party from … introducing designated matters into evidence". Fed. R. Civ. P. 37(d)(3) (incorporating sanctions listed in Rule 37(B)(2)(A)(i) – (vi)). Highland Park's Statements of Fact 55 and 56 should be stricken.

**(2) The Testimony of Mark Jones regarding Mass Shootings and Criminal Use of "Assault Weapons" Is Inadmissible.**

Highland Park's expert Mark Jones expresses no opinions of his own regarding the likely occurrence of mass shootings, the circumstances under which mass shootings occur, what impact local laws restricting "assault weapons" ownership might have on mass shootings or the frequency with which "assault weapons" are used in crime. Jones has not expressed opinions on these subjects because he has no "specialized knowledge" in these areas to help the Court understand the evidence and the issues. Fed. R. Evid. 702. Contrary to Highland Park's belief, Jones is not qualified to testify on these subjects simply because he worked at the ATF for 20 years investigating firearms trafficking and other firearms related crimes. [2]

Jones presents hearsay evidence to the Court on these subjects, in the form of conclusions and analyses reached and performed by others on mass shootings and "assault weapon" involvement in crime. Although Rule of Evidence 703 permits expert witnesses to testify to facts

---

[2] Highland Park incorrectly believes that long time service as a law enforcement officer qualifies one to offer expert opinions on all matters relating to firearms, including subjects that most law enforcement officers never touch, such as criminological evidence and theory touching on the effectiveness of gun control laws; wound and terminal ballistics; firearms design and function; the appropriate us of firearm for hunting; and the types of firearms commonly owned in the United States by law abiding persons. There is nothing innate in service as a law enforcement officer that results in expertise in these areas.

that "would otherwise be inadmissible", they may do so only if (a) they are the kinds of facts on which experts in the field reasonably rely (b) their probative value outweighs their prejudicial effect and (c) *they are offered as support for an expert opinion*. Rule 703 plainly does not countenance how Highland Park has used Jones here, to merely present the work and analyses of others on mass shootings and involvement of "assault weapons" in crime into evidence. At some point, an opinion from Jones on these subjects had to surface, but Jones offered none.

Jones is not even able to help the Court understand the hearsay evidence he presents. He does not know how Mayors Against Illegal Guns (MAIG) gathered information on mass shootings and cannot testify MAIG did so reliably. He also did not review the raw data gathered by MAIG. And Highland Park's representation that Jones himself performed a "computation" of some kind regarding mass shootings based on the MAIG is incorrect. (Def.'s Resp. at 13). The numbers Jones sets forth in Statement of Fact 58 are shown in the bar graph and caption on page 3 of the MAIG report (Doc. 45-7). Jones merely repeats them.

Statements of Fact 57, 58, 59, 60, 61, 62, and 63 should be stricken because the source Highland Park offers in support of these statements is not admissible in evidence. Rule 703 does not permit Highland Park to use Jones to place otherwise inadmissible evidence into the record.

**(B) Chief Shafer Has Not Been Qualified to Offer Expert Opinions on the Suitability of "Assault Weapons" for Lawful Uses and Whether the Presence of "Assault Weapons" Will Increase the Probability of Multiple Victim Incidents.**

Nothing is known about Chief of Police Shafer's qualifications to offer expert testimony in this case except that he has been a police officer for more than 35 years and he requested "that the City Council approve the use of .223 rifles by members of the department". (Def.'s Resp. at 8). Notwithstanding Highland Park's argument to the contrary, service as a police officer is not alone sufficient to qualify a witness to express expert opinions on any a subject matter related to

6

firearms. "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony. *Padilla v. Hunter Douglass Window Coverings, Inc*., 2014 U.S. Dist. LEXIS 14620 (Feb. 6, 2014 N.D. Ill.) (witness's experience as a CPSC Commissioner and knowledge acquired regarding incidents of window blind cord strangulations did not qualify him to testify on window blind cord design); *Klaczak ex rel. United States v. Consolidated Medical Transport, Inc*., 458 F.Supp.2d 622, 665 (N.D. Ill 2006) (expertise in forensic accounting held not a sufficient basis to offer expert testimony on Medicare billing and related cost accounting issues).

Highland Park has not shown that Chief Shafer is qualified to address suitable firearms for home defense use, whether "assault weapons" are appropriate for hunting or what impact ownership of "assault weapons" by law abiding persons in Highland Park might have on public safety. Highland Park's argument that Plaintiffs do not have a "basis for challenging [Chief Shafer's] expertise" because Plaintiffs did not take his deposition ignores that *Highland Park is the proponent* of the Chief Shafer's testimony. (Def.'s Resp. at 9). Plaintiffs were not required to depose him. It was Highland Park's burden to present Chief Shafer's qualifications to the Court and otherwise provide his testimony in a form that would be admissible at trial. Highland Park did not do so.

Chief Shafer's Declaration is virtually silent on his qualifications to express the opinions he offers. Plaintiffs have not waived their right to contest Chief Shafer's qualifications, and Statements of Fact 25, 26, 27, 28, 30 and 31 should be stricken.

**II. A "Close Fit" between the Laurie Dann Incident and Highland Park's Decision to Prohibit Possession of "Assault Weapons" by Law Abiding Persons Does Not Exist.**

Plaintiffs' position is that the Ordinance is categorically unconstitutional under *District of Columbia v. Heller*, 554 U.S. 570 (2009) because it prohibits possession of a class of firearms by law abiding persons that are commonly owned for lawful purposes, including self-defense in the home. Under *Heller*, there is to be no balancing of the constitutional right to possess these firearms with Highland Park's rationale for the Ordinance.

However, if Highland Park's rationale were examined, any evidence justifying violation of Plaintiffs' Second Amendment rights must fairly support the rationale. *See Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 438-39 (2002) ("The municipality's evidence must fairly support the municipality's rational for the ordinance".). Anecdotal justification for infringement of core constitutional guarantees are insufficient. *New Albany DVD, LLC v. City of New Albany*, 581 F.3d 556, 560 (7th Cir. 2009) (rejecting anecdotal justification for ordinance prohibiting operation of adult book store).

Under the level of scrutiny pressed by Highland Park, there must be a "close fit" between the Ordinance and public safety. *See Ezell v. City of Chicago*, 651 F.3d 684, 709 (7th Cir. 2011) (a "rigorous showing" that is "not quire strict scrutiny"). Exactly how evidence of Laurie Dann's crimes with an incendiary device and handguns fairly supports a "close fit" with a ban on firearms that played no role in her crimes remains unexplained. Criminal violence can occur anywhere, and if Dann's crimes fairly support Highland Park's ban on possession of "assault weapons" by law abiding persons, any criminal use of any type of firearm, no matter where, when or how it occurred, could be cited by any community as evidence justifying a similar ban.

The argument that Dann's crimes could have been "worse" if she possessed an "assault weapon" instead of a revolver and a semi-automatic pistol is based on speculation, not evidence. (Def.'s Resp. at 5). *See Ezell*, 651 F.3d at 709 (City's entire defense of firing range ban rested on speculation about accidents and theft). Under Highland Park's "could have been worse" logic, if Dann had used a 20 gauge shotgun to commit her crimes, there would then be justification for banning possession of more powerful 12 gauge shotguns. If criminal use of a type of firearm is evidence supporting a ban on possession of the firearms by law abiding persons, there would be justification for banning every type of firearm, including handguns, which criminals overwhelmingly use and prefer.

Evidence that criminals have used firearms to commit criminal acts simply cannot serve as justification for prohibiting possession of firearms by law abiding persons for lawful purposes. Just as there can be no "heckler veto" over free speech there can be no "criminal veto" over lawful firearms possession by law abiding persons. *Cf. New Albany DVD*, 581 F.3d at 560 (argument that presence of adult book store may expose persons in any area to theft rejected as paternalistic). Highland Park Statement of Fact 24 be stricken as irrelevant.

### III. Highland Park Could Have Specifically Referenced the Ordinance Definition of "Assault Weapon" in its Rule 56.1 Statement of Facts, but it Did Not.

Local Rule 56.1(a)(3) required Highland Park to submit a statement of material facts, each of which was to have made "specific reference to the affidavits, parts of the record and other supporting material relied upon to support the facts set forth". It would have been a simple matter for Highland Park to make "specific reference" to the definition of "assault weapon" set forth in the Highland Park Ordinance in each statement of fact that referenced "assault weapon". But Highland Park did not do so. Its failure to do so is a violation of Rule 56.1(a)(3). *See Malec*

*v. Stanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) ("Three operative concepts animate this rule: facts, short and specific".).

Highland Park's clarification that it intended the definition of "assault weapon" as used in its statements of fact to be the definition provided in the Ordinance is too late. Plaintiffs were required to respond to Highland Park's statements of fact as they were submitted, not as later explained. Highland Park's failure to provide a specific definition of "assault weapon" in its statements of fact put Plaintiffs in the untenable position of responding in many instances based on an assumed definition of the term. That is not how Rule 56.1 works.

Highland Park's assertion that its definition of "assault weapon" is an established fact and has been part of the "general legislative vocabulary for more than 20 years" distorts the ongoing policy debate in this country over so-called "assault weapon" bans. (Def.'s Resp. at 3). It is not a secret that those pressing for restrictions on civilian firearms ownership have sought to exploit "the public's confusion over fully automatic machine guns versus semiautomatic assault weapons" to "increase the chance of public support for restrictions of these weapons". JOSH SUGARMANN, ASSAULT WEAPONS AND ACCESSORIES IN AMERICA, Conclusion (Violence Policy Center 1988), available at www.vpc.org/studies/awaconc.htm (last visited Aug. 8, 2014). This case is an attempt to vindicate Plaintiffs' Second Amendment rights and set the record straight: the class of firearms banned by Highland Park are not "assault weapons" but simply semi-automatic firearms that will discharge one round with each trigger pull, as virtually all firearms do.

Highland Park's assertion that its politicized definition is an established fact also ignores what this case is about: Whether the City Council's ban of a broad class of commonly owned firearms violates the Second Amendment. Indeed, Highland Park's motion for summary

10

judgment is premised on its definition of the firearms as a threat to public safety. Highland Park has the burden in this Court to defend the Ordinance with evidence and specific reference to the record. It should not permitted to do so in a misleading, imprecise and argumentative manner.

**IV.     Conclusion**

For all of the foregoing reasons, Plaintiffs' request the Court strike Defendant's Statements of Material Fact Nos. 9, 24, 25, 26, 27, 28, 29, 30, 31, 34, 51, 54, 55, 56, 57, 58, 59, 60, 61, 62 and 63.

Respectfully submitted,

/s/ James B. Vogts
James B. Vogts
Andrew A. Lothson
Brett M. Henne
Swanson, Martin & Bell, LLP
330 N. Wabash, Suite 3300
Chicago, Illinois 60611
(312) 222-8517
jvogts@smbtrials.com
bhenne@smbtrials.com
alothson@smbtrials.com

**Attorneys for Plaintiff**

# CERTIFICATE OF SERVICE

I, James B. Vogts, hereby certify that on the 8th day of August, 2014, I caused to be served a copy of the foregoing document on all counsel of record listed below, via the Court's ECF system and/or by U.S. Mail.

1. Christopher B. Wilson
   Perkins & Coie LLP
   131 S. Dearborn Street
   Suite 1700
   Chicago, IL 60603
   (312) 324- 8400
   Email: cwilson@perkinscoie.com

2. Christopher J. Murdoch
   Holland & Knight, LLP
   131 South Dearborn Street
   30th Floor
   Chicago, IL 60603
   (312) 263-3600
   Email: chris.murdoch@hklaw.com

3. Hart M. Passman
   Holland and Knight, LLP
   131 South Dearborn
   30th Floor
   Chicago, IL 60603
   (312) 578-6634
   Email: hart.passman@hklaw.com

4. Steven M. Elrod
   Holland & Knight, LLP
   131 South Dearborn Street
   30th Floor
   Chicago, IL 60603
   (312) 263-3600
   Email: steven.elrod@hklaw.com

/s/ *James B. Vogts*
James B. Vogts