# EXHIBIT A

## Page 1

STATE OF ILLINOIS )
) SS:
COUNTY OF C O O K )
IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CHANCERY DIVISION

MATTHEW D. WILSON, TORY )
EDHLUND, and JOSEPH )
MESSINCO, )
    Plaintiffs, )
vs. ) No. 07 CH 4848
COOK COUNTY, A PUBLIC )
BODY AND CORPORATE, TONI )
PRECKWINKLE, BOARD )
PRESIDENT, IN HER )
OFFICIAL CAPACITY AND )
ITS BOARD OF )
COMMISSIONERS IN THEIR )
OFFICIAL CAPACITIES, )
NAMELY: EARLEAN COLLINS, )
ROBERT STEELE, JERRY )
BUTLER, WILLIAM M. )
BEAVERS, DEBORAH SIMS, )
JOAN PATRICIA MURPHY, )
BRIDGET GAINER, JESUS G. )
GARCIA, PETER N. )
SILVESTRI, JOHN P. )
DALEY, LARRY SUFFREDIN, )
GREGG GOSLIN, JOHN A. )
FRITCHEY, TIMOTHY O. )
SCHNEIDER, JEFFREY )
TOBOLSKI, EDWIN REYES, )
ELIZABETH ANN DOODY )
GORMAN, and THOMAS DART, )
SHERIFF OF COOK COUNTY, )
IN HIS OFFICIAL )
CAPACITY, )
    Defendants. )

## Page 2

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ARIE S. FRIEDMAN, M.D. )
and The Illinois State )
Rifle Association, )
    Plaintiffs, )
vs. ) No. 13-cv-9073
CITY OF HIGHLAND PARK, )
    Defendant. )

    The discovery deposition of JAMES YURGEALITIS, taken in the above-entitled causes, before Rebecca Feeman, an Illinois Shorthand Reporter, on May 8, 2014 at 330 North Wabash Avenue, Suite 3300, Chicago, Illinois, pursuant to notice.

Rebecca Feeman, CSR, RPR
License No.: 084-004726

## Page 3

1 APPEARANCES:
2   SWANSON, MARTIN & BELL
3   BY: MR. JAMES VOGTS
4   330 North Wabash Avenue, Suite 3300
5   Chicago, Illinois 60611
6   (312) 321-9100
7   jvogts@smbtrials.com
8     and
9   VICTOR D. QUILICI, ATTORNEY AND
10   COUNSELOR AT LAW
11   BY: MR. VICTOR D. QUILICI
12   P/O Box 428
13   River Grove, Illinois 60171
14   (847) 298-2566
15     *Representing the Plaintiffs;*
16
17   PERKINS COIE, LLP
18   BY: MR. CHRISTOPHER B. WILSON
19   131 South Dearborn Street, 17th Floor
20   Chicago, Illinois 60603
21   (312) 324-8603
22   cwilson@perkinscoie.com
23     Representing City of Highland Park;

## Page 4

1 APPEARANCES (Continued):
2   STATE'S ATTORNEY OF
3   COOK COUNTY, ILLINOIS
4   BY: MR. JAMES C. PULLOS
5   50 West Washington Street, Room 500
6   Chicago, Illinois 60602
7   (312) 603-5105
8   james.pullos@cookcountyil.gov
9     Representing the Defendants.

**Page 13**

1  some minor differences. I would have to review
2  them both, but I do recall there being minor
3  differences in terms of their substance.
4      Q. Okay. For the purposes of my questions
5  today and the purposes of your answers, whenever
6  I refer to the ordinance, I'm referring to both
7  ordinances unless I specify differently, one or
8  the other; is that fair?
9      A. That's fine.
10     Q. Okay. If you answer and refer to the
11  ordinance, you're referring to both, again,
12  unless you specify and say the Cook County
13  ordinance or the Highland Park ordinance; is
14  that fair?
15     A. Certainly.
16     Q. Going back to Exhibit 3, your
17  educational background is a political science in
18  psychology degree from St. John Fisher College
19  in 1958; is that correct?
20     A. Correct.
21     Q. Do you have any further college
22  education?
23     A. No further formal college education.
24     Q. And you worked for the Bureau of

**Page 14**

1  Alcohol, Tobacco, Firearms and Explosives from
2  1990 through 2012, is that correct?
3     A. Correct.
4     Q. And did you retire in 2012 from the
5  department?
6     A. Yes.
7     Q. You spent the last nine or so years as
8  the program manager for forensic services at the
9  ATF National Laboratory Center in Maryland, is
10  that correct?
11     A. Correct.
12     Q. Could you generally describe the
13  responsibilities you had as program manager for
14  forensic services?
15     A. I was responsible for development,
16  curriculum development, of ATF's forensic
17  training programs which came from the ATF
18  National Laboratory from supervision of the
19  instructor cadre, sourcing of funding, student
20  selection, putting together courses that we
21  could either host at the ATF National Laboratory
22  center or we could export and do on site for
23  different agencies.
24     Most of them were firearms-based

**Page 15**

1  programs, forensic firearms-based programs in
2  that we had serial number restoration training.
3  There were some firearms identification classes
4  that we supported.
5     There was the National Firearms
6  Examiner Academy, which is a program for entry
7  level forensic firearms examiners. That's a
8  one-year program that basically the ATF sort of
9  takes them out of their home laboratory
10  environment and provides the first year of
11  training for them. Their general training
12  period is usually approximately two years before
13  they can independently perform casework at their
14  home laboratories.
15     Then from time to time I was sent on a
16  temporary detail to either another section of
17  ATF or to another agency just for support or
18  because they thought I was the person that would
19  be a good person to send.
20     Q. Before you assumed the position of
21  program manager for forensic services, what
22  experience did you have in the forensic firearms
23  sciences?
24     A. On the forensic firearms sciences I am

**Page 16**

1  not by trade or by training a forensic firearms
2  or tool mark examiner. The programs generally
3  were headed up by somebody who had experience as
4  a field agent testifying as an expert in regard
5  to the interstate nexus of firearms or someone
6  who had an extensive background in
7  identification of firearms. I had done that for
8  five or six years prior to going to the ATF
9  National Laboratory, so the opportunity opened
10  up and I availed myself of it, and I was there
11  up until my retirement.
12     Q. By this question I don't mean to
13  diminish the responsibilities you had in that
14  position, but is it fair to say that the
15  responsibilities you had as program manager were
16  largely administrative, to administer the
17  program whereby forensic scientists were taught
18  at the laboratory?
19     A. Well, it was. Again, I'll restate that
20  I'm not a forensic firearm and tool mark
21  examiner. Some of it was administrative. Some
22  of it I did the instruction depending on what
23  the subject matter was or the availability of
24  outside instructors to come in.

McCorkle Litigation Services, Inc.
Chicago, Illinois (312) 263-0052

**Page 17**

1 Q. What subject matters did you instruct
2 on?
3 A. Usually federal firearms regulations.
4 I assisted in construction on operability,
5 firearms operating systems. There was also a
6 number of modules of instruction that concerned
7 ammunition, ammunition components.
8 Q. Okay. Prior to becoming the program
9 manager for forensic services, you worked as
10 special agent violent crime coordinator in the
11 ATF Baltimore field division for seven years or
12 so; is that correct?
13 A. Correct.
14 Q. And Exhibit 3 states you were
15 responsible for the management of ATF's Project
16 Disarm, is that correct?
17 A. Yes.
18 Q. Would you please explain to us what
19 Project Disarm was or is?
20 A. Well, Project Disarm is a program
21 that's still running in Maryland in the
22 Baltimore field division, and it involved
23 reviewing state and local firearms related
24 arrests to see whether or not the individuals

**Page 18**

1 that were arrested were eligible for enhanced
2 sentencing due to their criminal history, for
3 instance, what is loosely termed an armed career
4 criminal.
5 So if you had an individual who was
6 arrested in, say, Baltimore City for what they
7 would call a handgun violation, we reviewed that
8 arrest. We reviewed their criminal history. We
9 spoke with the officers and tried to determine
10 whether or not that would qualify to take that
11 case from state court, subsequently indict that
12 individual federally, and take the case to
13 federal court.
14 Q. The reason being that the potential
15 penalties or consequences of a federal violation
16 are more strict than the state violation?
17 A. Yes, but also based on what their
18 criminal history was. If they were particularly
19 violent individuals or individuals with a
20 violent criminal history, what we were concerned
21 with was trying to take that case out of the
22 local jurisdiction and take it to federal court
23 because the potential sentence for a handgun
24 violation on the state side was significantly

**Page 19**

1 less than, say, somebody who had two or three
2 violent prior felony convictions where they
3 might be looking at maybe 10 to 15 years minimum
4 mandatory time federally.
5 Q. So you were not making those arrests.
6 You were reviewing the arrests made by typically
7 state law enforcement or city law enforcement
8 authorities?
9 A. Well, I would review the state arrests,
10 but more often than not, these individuals had
11 to go out and be rearrested federally, and some
12 of the cases, if not I would say maybe up to
13 half of those cases, there was some follow-up
14 investigation that needed to be done or requests
15 for forensic work.
16 So basically the qualifications for
17 what they were looking for, say, in a Baltimore
18 City arrest in order to prove their case on the
19 State's Attorney's side were different than what
20 the U.S. Attorney's Office was looking for.
21 Q. So you needed to build on the arrest
22 already made by the Baltimore City Police
23 Department in order to bring that case to the
24 federal prosecutor and successfully prosecute

**Page 20**

1 the case?
2 A. I wouldn't say we had to build on it
3 unless there was perhaps a homicide or there was
4 an active shooting involved. I would say more
5 or less you had to tailor it to a certain
6 extent.
7 Q. Before that position, you worked as a
8 special agent in the ATF Baltimore field
9 division for approximately eight years; is that
10 correct?
11 A. Yes.
12 Q. Generally describe the responsibilities
13 you had in that position.
14 A. Well, as a federal criminal
15 investigator, most of my -- I mean, I was --
16 independently and in conjunction with other
17 individuals and other agencies, I conducted
18 investigations of various offenses that ATF had
19 jurisdiction over, whether it was illegal
20 firearms possession, firearms trafficking, gun
21 store burglaries.
22 Because of ATF's federal jurisdiction
23 over firearms laws, we would often be requested
24 to assist other agencies in homicides, fraud